ELMER GREENLEE v. RALPH DREES.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, THIRD-PARTY DEFENDANT.

144 N. W. (2d) 774.

August 12, 1966—No. 40,043.

[REDACTED]

*Baudler & Baudler* and *Plunkett & Plunkett,* for appellants.
*Moonan & Senn,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying the alternative motion of plaintiff, Elmer Greenlee, and defendant and third-party plaintiff, Ralph Drees, for amended findings of fact and conclusions of law or for a new trial. The plaintiff recovered a verdict for injuries sustained in an accident while he was employed doing carpentry work on the Drees premises. It is first contended that the trial court erred in holding that at the time of the accident Greenlee was an employee rather than an independent contractor. It is further argued that if Greenlee's status was, in fact, that of an employee at the time of his injury, he was a "residence employee," as defined by a personal and farm liability policy issued to Drees by the third-party defendant, State Farm Mutual Automobile Insurance Company, and that under the terms of that policy the company is liable for the amount of the verdict. The trial court held that under the provisions of the policy, the risk was not insured.

It appears from the record that the third-party plaintiff Drees is a farmer who operates a 240-acre farm which he owns together with an additional 200 acres which he rents. He employs no farm laborers, the work being done by himself and his older sons. In early 1963, Drees decided to construct a new dwelling on his premises. He consulted the manager of a lumber and building-material company in a neighboring

town. The manager prepared plans and estimated the total cost of the proposed structure. Drees inquired as to who could build the house for him, and the manager suggested the names of workmen in the vicinity who did construction work. In the course of their discussions, the manager agreed to supply and pay the construction workers, but said that if this were done it would be necessary to charge 50 cents per hour per man in order to defray costs including social security taxes and workmen's compensation insurance. Drees did not wish to incur this expense. He contacted four of the carpenters in the vicinity suggested by the manager and engaged them to work on an hourly basis. These workmen included Elmer Greenlee, the original plaintiff in this action.

The workmen proceeded to stake out the house and began construction of it in accordance with the plans and specifications provided by the building manager. It would appear that the communications between the carpenters and the defendant Drees were conducted largely through Justin Teiman, one of the four carpenters, and that if any problems arose with reference to the work, Teiman would contact the manager of the lumberyard. Each man was paid $1.75 an hour. No one was paid for supervising the work. About 10 days or 2 weeks after the job commenced, Greenlee was injured. He fell from faulty scaffolding which was erected by Drees and his sons.

The practice followed by the group of carpenters in that particular rural community, when engaged to work for individual employers who do not wish to be burdened with the cost of unemployment compensation or other expenses deriving from the employer-employee relationship, was explained by one of the carpenters in this statement:

"* * * No one in particular directs the work on the jobs. The arrangement we have is that the individual that is having the work done pays each one of us separately and can fire any of us if the individual does not care to have any one of us work on his place."

■ The facts which point to the actual relationship of the parties are these: It is undisputed that Drees owned the premises; that the house was being built according to plans provided him by the manager of the lumber company; that Drees directed where it was to be built; that he

and his sons were present on the job, did part of the work, and decided how much of the work they would do themselves and what would be left to the others. There was no partnership or sharing of profits among the four workmen. There was no contract or agreement to complete the job at any particular time. They could quit whenever they chose and were subject to dismissal at the pleasure of Drees.

In support of their argument that Greenlee was, in fact, an independent contractor rather than an employee, appellants rely on those authorities, usually workmen's compensation cases, which discuss the legal distinctions between an employee and an independent contractor.[1] In Boland v. Morrill, 270 Minn. 86, 91, 132 N. W. (2d) 711, 715, we said that it is usually a fact question:

"* * * The question has been a fruitful source of litigation over the years. He have had occasion from time to time to consider a wide variety of facts in seeking an answer to this problem. The facts are seldom the same. Whether we apply the right of control or any other test, it is evident that no single factor standing alone will suffice. It is necessary to examine the overall relationship between the parties to determine whether the necessary contacts exist between them to establish one relationship or the other."

It is unnecessary to discuss the numerous authorities which deal with this subject. It may be said that the finding of the trial court is supported by Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421, and Norris v. Kaempfer, 274 App. Div. 857, 81 N. Y. S. (2d) 808, cases dealing with similar fact situations where workmen employed under a loose arrangement subject to the employer's right of control and right to discharge at any time were held not to be independent contractors. It seems to us that the situation here is no different than if Drees

---

[1] Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W. (2d) 484; Lynch v. Hutchinson Produce Co. 169 Minn. 329, 211 N. W. 313; Rick v. Noble, 196 Minn. 185, 264 N. W. 685; Geerdes v. J. R. Watkins Co. 258 Minn. 254, 103 N. W. (2d) 641; Mount v. City of Redwood Falls, 260 Minn. 16, 108 N. W. (2d) 443.

had gone to an employment agency and hired four carpenters. It would hardly be realistic to say that Drees had four independent contractors engaged in the project of doing carpentry work on a one-family dwelling nor is the record persuasive that the type of work these men were doing involved technical skill of a nature that could not be supervised by the defendant Drees so as to preclude the master-servant status. Drees and his sons did part of the work themselves and he and a neighbor constructed the faulty scaffolding on which the workman was injured. We agree that in the context of the record the trial court's finding of the employer-employee status is fairly established.

■  Appellants next argue that if it is assumed that Greenlee was in fact an employee, the third-party defendant, State Farm Mutual Automobile Insurance Company, under the terms of a "personal and farm liability policy" is required to pay the amount of the verdict recovered in Greenlee's action against Drees. This policy, which apparently became effective April 1, 1961, and was renewed on a semiannual basis since then, contains a provision relating to "comprehensive personal liability" which, so far as applicable here, states:

"Insuring Agreements
"Coverage AF — Comprehensive Personal Liability.

"Division I — Bodily Injury and Property Damage Liability. To pay all damages which the insured shall become legally obligated to pay because of bodily injury sustained by other persons and injury to or destruction of property of others."

The foregoing undertaking is subject to certain specified exclusions which, so far as applicable here, state:

"This policy does not apply:

\*   \*   \*   \*   \*

"(h)  under coverage AF:

\*   \*   \*   \*   \*

"(4) to bodily injury to any employee of an insured, other than a residence employee, arising out of and in the course of his employment."

It is the contention of the defendant Drees that Greenlee was a "residence employee." This term is defined in the policy as:

"Residence Employee — means

"(1) an employee of an insured, other than a farm employee, (a) whose duties are incident to the ownership, maintenance or use of (i) any one-family dwelling in which the insured maintains a residence or (ii) any other premises described in the declarations except farm premises; or (b) who performs elsewhere duties of a similar nature not in connection with an insured's business or farming; or (2) an employee of an insured whose duties are incident to the ownership, maintenance or use of the farm premises, provided the total of the employee hours of all such employees does not exceed 72 hours per calendar year."

It is apparent from an examination of this policy that the coverage is limited to certain risks to which the insured might be exposed in the operation of the farm premises. It does not protect the insured from liability for injuries to farm employees after a period of 72 employee hours or to other employees than "residence employees." The former provision would not apply to the plaintiff for the reason that at the time of the accident the number of hours worked by him far exceeded the limit fixed in the policy. It remains to inquire if Greenlee was engaged in duties "incident to the ownership, maintenance or use of (i) any one-family dwelling in which the insured maintains a residence or (ii) any other premises described in the declarations except farm premises."

While this clause of the policy is not a model of clarity, we agree with the trial court that it does not protect the insured for damages sustained by a carpenter under the facts disclosed in the record. The clause refers to injuries sustained by one whose duties are incident to the ownership, maintenance, or use of a dwelling in which the insured "maintains a residence." Words used in a contract for insurance must be given the meaning they ordinarily convey to the popular mind.[2] It would seem that if the language used in this clause is given an ordinary meaning, it would indicate that the parties intended it would apply to liability incurred

[2] Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108.

because of injuries sustained by domestic or maintenance employees who might be exposed to dangers involved in work in or about a place used as a residence. While it is unnecessary to attempt to define the particular duties which this clause comprehends, we agree with the trial court's determination that it does not apply to a carpenter who is engaged in the construction of a building which may at some future time be used as a residence.

The third-party plaintiff cites Donarski v. Lardy, 251 Minn. 358, 88 N. W. (2d) 7, for the proposition that an insurance policy is to be liberally construed in favor of the insured and every reasonable doubt as to the meaning of the language therein is to be resolved in favor of the insured.[3] But we agree with the trial court that even by giving full force to this well-established rule, it is impossible to escape the force of the clear language used in the policy. It seems to us that the rule which should in fairness control here is that provisions of the policy must be given a reasonable and practical construction not inconsistent with the clear language used therein to effect the intention of the parties. The purpose of construction of a contract is to do no more than to give effect to the plain meaning of the language. Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855, 50 A. L. R. (2d) 108; Stephanie v. Consumers Mutual Ins. Co. 246 Minn. 62, 74 N. W. (2d) 116; Bobich v. Oja, 258 Minn. 287, 104 N. W. (2d) 19; Shake v. Westchester Fire Ins. Co. 158 Minn. 40, 196 N. W. 804; Motor Vehicle Cas. Co. v. Smith, 247 Minn. 151, 76 N. W. (2d) 486; Pickens v. Maryland Cas. Co. 141 Neb. 105, 2 N. W. (2d) 593.

We agree that it would be unreasonable to assume that a provision in a policy of insurance which relates to the risk of injuries to which a domestic, household, or maintenance servant would be exposed in the performance of duties in or about a residence used by the insured should be extended to include the greater risks to which a carpenter or construction worker might be exposed in the erection of a new building.[4]

---

[3] 9 Dunnell, Dig. (3 ed.) § 4659.

[4] Since we hold that Greenlee was not a residence employee, part (ii) of the definition may be disregarded since its only significance is that it refers

It has already been observed that the third-party plaintiff Drees had been made aware of the fact that an obligation existed to provide protection for workmen's compensation. In this connection it is relevant to point out a further provision of the policy which states:

"This policy does not apply:

\* \* \* \* \*

"(d)  to bodily injury to

"(1)  any employee of the insured, if benefits therefor are either payable or required to be provided under any workmen's compensation or disability benefits law."

The fact that the carpenters engaged in construction of a building on farm premises did not change their status while so engaged to that of farm laborers or to persons employed by the owner of the premises in duties in and about an occupied dwelling. Peterson v. Farmers State Bank, 180 Minn. 40, 230 N. W. 124.

We do not feel that the other points raised by the appellants require discussion.

Affirmed.

---

to a residence employee whose duties are performed elsewhere or on "any other premises."