**EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Appellant,**

v.

**The HOME INDEMNITY COMPANY, Appellee.**

Court of Appeals of Kentucky.

Jan. 30, 1970.

Rehearing Denied May 8, 1970.

John K. Gordinier, C. Alex Rose, Curtis & Rose, Louisville, for appellant.

William Mellor, Louisville, for appellee.

DAVIS, Commissioner.

At issue is which of two liability insurance carriers must pay damages for the personal injury sustained by Cecil Jack Allen in an unusual accident.

Allen undertook to buy some chairs at the store of Sun TV No. 2, Inc. Joseph Schamback, a stockholder and manager of Sun TV No. 2, waited on Allen. When it was noted that the price for the chairs was not marked on them, Schamback accompanied Allen to Schamback's office to examine a price list. Schamback's briefcase was lying open on top of a file cabinet with a revolver on top of various documents in the briefcase. Schamback picked up the revolver in order to reach the papers, but turned momentarily to show Allen the weapon. Unexplainedly the pistol fired, wounding Allen. Schamback thus recounted the incident:

> "Well, in looking for the papers, I came across the gun, and I took the gun out of the briefcase to show it to Jack and with a matter of movement of maybe eight inches, ten, twelve inches, the gun discharged; and again, why it discharged, I have no idea."

The unfortunate accident occurred within an elapsed time of a "couple of seconds."

Allen sued Sun TV No. 2 and Schamback. The trial court gave a directed

verdict for Sun TV No. 2 on the theory that Schamback's activity which injured Allen was not within the scope of his employment by Sun. The jury awarded Allen $25,000 against Schamback. The record reflects that Allen has been paid but does not indicate by whom. Allen, Schamback, and Sun TV are not parties to this appeal.

Employers' Liability Assurance Corporation and Home Indemnity joined issue as to which of them had liability coverage. The trial court determined that liability coverage was due from Employers, absolving Home. Employers seeks reversal. Home contends that the appeal should be dismissed for failure to join Schamback as an indispensable party and, alternatively, that the matter of coverage is "res judicata."

Home's policy undertook to pay on behalf of Sun all sums legally due from "the Insured" for bodily injury or property damage "* * * due to an occurrence arising out of the ownership, maintenance or use of the premises for the purposes of the business stated in the Declarations and all operations conducted for such purposes or necessary or incidental thereto, * * *." This coverage was prescribed in Sections E and F of the policy.

An additional provision of the policy was:

"With respect to the insurance under Coverages E and F the unqualified word 'Insured' includes the Named Insured and also includes the following:

(a) any executive officer, director or stockholder of the Named Insured but only while acting within the scope of his duties as such; * * *."

The trial court held as a matter of law that Schamback was not acting within the scope of his employment and duties for Sun at the time of the shooting of Allen. Based on that conclusion, judgment was entered September 23, 1968, specif-

ically absolving Home from liability and imposing liability coverage on Employers. Employers concedes that it has the coverage if Home does not, but it contends that Home has the coverage, thus absolving Employers.

The thrust of appellant's argument is that Home's liability as respects Schamback is a separate and distinct coverage from that extended to Sun. Although Employers contends that the trial court erred in ruling that Schamback was acting beyond the scope of his employment, it maintains that coverage exists for Schamback under the policy anyway. There are several precedents supporting the proposition that coverage for "additional insureds" is indeed a separate and distinct obligation from the coverage afforded the named insured. Cf. Morgan v. Greater New York Taxpayers Mut. Ins. Ass'n, 305 N.Y. 243, 112 N.E.2d 273; Wenig v. Glenns Falls Indemnity Co., 294 N.Y. 195, 61 N.E.2d 442; Western Casualty & Surety Co. v. Aponaug Mfg. Co. (CA5), 197 F.2d 673.

From this premise appellant reasons that the common-law standards for measuring whether Schamback acted "within the scope of his duties" are not applicable. Thus, appellant says, it matters not whether Schamback's activities legally created liability on Sun under the doctrine of *respondeat superior*—rather, the question is whether Schamback was covered as an "additional insured" because he was functioning on the premises for the purposes of the business and to that extent within the scope of his duties as such.

In support of its argument appellant points out that Sun would be liable, and thus covered by Home's insurance, *without any additional insurance clause,* if Schamback had acted within the scope of his employment in the meaning of *respondeat superior.* From this, says appellant, it is obvious that the usual test does not apply in determining "scope of employment."

We conclude that Schamback was acting within the scope of his employment,

even within the general rules of *respondeat superior*. It was shown that he managed the Sun store; he sometimes transported company funds in his briefcase; he was dealing with a customer of the store, attempting to complete a sale. All of this occurred on the company's premises during business hours. Social amenities by a salesman to a customer, even if partaking somewhat of technical departures from "strictly business" routine, may often fall within the normal scope of the salesman's duties. If Schamback had inadvertently dropped his personal bowling ball on Allen's head while attempting to locate the price list, would anyone argue that he had gone beyond the "scope of his duties"? We think not. The ancient theory absolved the master on the ground that he did not authorize or employ his servant to be negligent at all. Certainly Sun did not employ Schamback to shoot customers, and he did not intend to do so. Yet that very thing happened while he was attempting to attend to Sun's business.

In Frederick v. Collins, Ky., 378 S.W. 2d 617, we dealt with the question of a master's liability where the servant shot and killed a customer pretending to be a hold-up man. There it was shown that the master had expressly directed the servant not to undertake forcible prevention of any robbery. The court affirmed a judgment against the master, reasoning that even the intended tortious act of the employee was within the scope of his employment since it was one reasonably foreseeable in light of the employee's duties. We regard Schamback's position and duties as creating reasonable foreseeability of his keeping a revolver for protection of himself and the store and its contents. His momentary deviation from pure business routine was not such a departure as to insulate his employer, nor of such magnitude as to render the activity as beyond the scope of his employment. See 35 Am. Jur., Master and Servant, Section 556, pages 990, 991, in which it is said in part:

"Generally, it may be said that in order for an employer to escape liability for an act of his employee on the ground of the latter's deviation or departure from the employer's business for a purpose of his own, it must be made to appear that the employee abandoned and turned aside completely from the employer's business, to engage in some purpose wholly his own, for it is not every deviation from the direct line of his duties on the part of an employee that constitutes a turning aside from and an abandonment of his master's business."

In our view Schamback was covered within the purview of Home's policy, and it was error for the trial court to rule otherwise. It remains to determine whether procedural aspects of this appeal foreclose Employers' right to reversal.

■ On June 14, 1968, the trial court entered judgment awarding Allen $25,000 against Schamback and dismissing Allen's claim against Sun. That judgment made no determination of the issue between Employers and Home as to which had coverage. Neither did it recite finality as prescribed by CR 54.02, although the action involved multiple claims, particularly including the controversy between Home and Employers. It was not until September 23, 1968, that the judgment was entered which disposed of the issue between the insurance companies. That was the final judgment, and the judgment from which this appeal was prosecuted. By the very terms of CR 54.02(2), the September judgment had the effect of readjudicating finally as of its date, and in the same terms, all prior interlocutory orders or judgments. Hence, the present appeal effectively puts in issue the earlier judgment insofar as it affects the issue between Home and Employers. There is no *res judicata* principle available to Home.

■ The fact that Employers admitted in its pleadings that it had coverage if

Home did not is not a judicial admission of its liability in the circumstances at bar, despite Home's contention to the contrary.

Neither is there merit in Home's contention that the appeal should be dismissed for failure to include Schamback as a party on appeal. Nothing decided on this appeal can affect Schamback. The only issue is between the insurance companies as to which must "pick up the tab." Fortunately, the limits of liability in each policy adequately cover the judgment. The posture of the litigants who are before the court on this appeal is comparable to the posture which prevailed in Cottrell v. Martin A. Ceder, Ky., 376 S.W.2d 536. There is no basis for dismissing the appeal on procedural grounds.

The judgment is reversed with directions to enter a new judgment conforming to the opinion.

All concur.