# EMPLOYERS MUTUAL CASUALTY COMPANY OF DES MOINES v. DIANNE M. KANGAS, A MINOR, BY NORMAN KANGAS, HER FATHER AND NATURAL GUARDIAN, AND OTHERS.

245 N. W. 2d 873.

August 27, 1976—No. 46323.

*Kvass, Weisman & King, Charles T. Hvass,* and *Charles T. Hvass, Jr.,* for appellants.

*Collins & Buckley* and *James O. Redman,* for respondent.

Heard before Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from summary judgment of the Ramsey County District Court. Respondent-insurer brought a declaratory judgment action against its insured, appellants, and others to determine respondent's obligations under its "Comprehensive General Liability Insurance" policy with respect to a personal injury action brought by appellants against respondent's insured. Respondent's motion for summary judgment was granted, relieving it of any obligation to defend or indemnify its insured. Judgment was entered and this appeal followed. We affirm.

The insured, Vermont Isaacson, conducted a part-time "portable welding" business. During the summer of 1973, he obtained permission from the owner of the Elko Speedway to conduct his business at the speedway. His practice was to park his truck containing his welding equipment at a central location and await requests to perform his welding services. On those occasions when he left the truck, his wife would remain behind in order to answer inquiries from customers. Isaacson testified that he was available to weld from the time he arrived at the speedway until the time he left, and that he regarded all the time spent at the speedway as time spent in pursuit of his business.

On July 4, 1973, Isaacson was present at the speedway with his portable welding rig. He testified that he performed some welding services during the day. On the evening of the Fourth, after the races had ended, Isaacson left his truck and walked onto

the infield of the track. He had some bottle rockets[1] with him which he proceeded to shoot off. He then returned to his truck for a short time and left again, purchased a beer at a concession stand, and then continued to walk around the pit area. He stopped to talk with an acquaintance for a moment, following which he shot off several more bottle rockets until a friend of his warned him to stop. About 15 minutes later Isaacson was informed that a child had been injured by fireworks.

During this period of time (approximately 30 to 45 minutes), Isaacson was within a distance of 200 to 300 feet from his truck and apparently was within view of it. His wife remained with the truck. Although he did not receive any requests for welding services following the end of the races, he testified that he was available for work during that time and would have worked if requested.

The child who was injured was Dianne Kangas, one of the appellants herein. She sustained an injury to her eye as a result of being struck by a bottle rocket. A lawsuit was commenced against Isaacson by her father on her behalf and individually on October 17, 1973. Respondent-insurer then commenced the instant action seeking a declaration that under the policy issued Isaacson it was not obligated to defend or indemnify him with respect to the Kangas lawsuit. Its contention is that the policy's coverage does not extend to the activity or occurrence which resulted in Dianne Kangas' injury. It relies on the following provision in the policy:

"II.  PERSONS INSURED

"Each of the following is an insured under this insurance to the extent set forth below:

  (a)  if the named insured is designated in the declarations

---

[1] A bottle rocket is a small firework which consists of a short firecracker-rocket, 3 inches long, attached to a thin stick about 6 inches long, which, when lit, flies for several feet and then explodes.

as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor * * *."

Isaacson is designated in the declarations as an individual and is the sole proprietor of his portable welding company.

The sole issue raised on appeal is whether the occurrence which resulted in the injury occurred "with respect to the conduct of [the insured's] business * * *."

An insurance policy is a contract, the terms of which determine both the rights and obligations of the contracting parties. In construing an insurance policy, the paramount question is what hazards the parties intended to cover. In effectuating that intent, the words used must be understood in their ordinary and popular sense. While we recognize that ambiguities must be resolved in favor of the insured, we will not read an ambiguity into the plain language of a policy in order to provide coverage where it does not legitimately exist. See, e. g., Farkas v. Hartford Acc. & Ind. Co. 285 Minn. 324, 173 N. W. 2d 21 (1969) ; Greenlee v. Drees, 274 Minn. 538, 144 N. W. 2d 774 (1966) ; State Auto. & Cas. Underwriters v. Casualty Underwriters, Inc. 266 Minn. 536, 124 N. W. 2d 185 (1963) ; see, also, cases collected in Dunnell, Minn. Dig. § 4659.

The language of the policy at issue in this case is the phrase "with respect to the conduct of [the insured's] business." That business, as set forth in the policy, is "portable welder." Respondent argues that the phrase limits coverage to those injury-producing acts or occurrences which are within the scope of the insured's business. Accordingly, respondent concludes that setting off bottle rockets was a "frolic" bearing no "causal relationship or nexus" to the business of welding and thus is not within the coverage of the policy.

Appellants, on the other hand, urge the court to adopt a more expansive construction of the phrase. They would extend coverage to the immediate, injury-producing act or occurrence regardless of whether it deviates from the scope of the insured's busi-

ness, so long as the principal activity of the insured at the time of the injury is the conduct of his business. Appellants illustrate the application of that principle to the facts and circumstances of this case as follows:

"Mr. Isaacson went to Elko Speedway to engage in the business of welding. In line with his usual custom, he parked his truck, did some welding that night, and later went to a different area of the track leaving his wife in the truck. He remained at the track not because of any desire to shoot off fireworks but because he was waiting for further welding business. As a result of his activity while waiting, Dianne Kangas was struck in the eye and injured. [The court should focus] *not* upon the specific activity engaged in while waiting, but rather, upon the *activity of waiting* itself * * *."

Appellants cite three business insurance cases in support of their position, only one of which is closely analogous to the instant case, Grand Union Co. v. General Acc., Fire & Life Assur. Corp. 254 App. Div. 274, 4 N. Y. S. 2d 704, affirmed per curiam, 279 N. Y. 638, 18 N. E. 2d 38 (1938).[2] The plaintiff was the owner and operator of a retail grocery store. It had obtained from the defendant an insurance policy indemnifying it against loss resulting from "injuries suffered by reason of the ownership, care, maintenance, occupation or use of the described premises for the declared purposes by the assured," i. e., a meat and grocery store. 254 App. Div. 279, 4 N. Y. S. 2d 710. During the course of the business day, plaintiff's employees engaged in rifle target practice in the basement of the grocery store. One of the bullets penetrated the door of the basement, hit a pedestrian, and killed him. The defendant refused to assume liability

---

[2] The other two cases, Whetstone v. Orion Ins. Co. 302 F. 2d 15 (10 Cir. 1962), and Employers' Lia. Assur. Corp. v. Home Ind. Co. 452 S. W. 2d 620 (Ky. 1970), present circumstances from which it could reasonably be found that the injury-producing act was within the scope of the insured's business.

under the policy, either to defend or indemnify plaintiff, on the ground that the injury did not occur by reason of the use of the premises as a retail grocery store.

The New York court held that "the coverage of [the] policy [included] injuries caused by the negligent acts of employees on the premises while the premises [were] being used by the insured for the declared purposes but where the insured's employees are temporarily acting outside the scope of their employment without notice to or approval by the employer. Any exclusion from coverage of such an ordinary risk of the use of premises for business purposes must be by clear and unequivocal language." 254 App. Div. 280, 4 N. Y. S. 2d 710.

Regardless of the soundness of the Grand Union decision, we find it to be clearly distinguishable from the circumstances of the instant case. First, we note that the language defining coverage in the Grand Union policy is broader than the language of the instant policy. It is intended to cover the *business premises* and "injuries suffered by reason of [its] ownership, care, maintenance, occupation or use" of those premises, not simply *"the conduct of the business."*

Second, while we might agree with the New York court that "[t]he risk of injuries caused by employees is just as much one of the ordinary business risks of a business where the employees are engaged in a frolic as where they are acting fully within the scope of their employment," 254 App. Div. 280, 4 N. Y. S. 2d 710, we do not believe there exists the same degree of expectancy or foreseeability by the insurer when the frolic is that of the sole proprietor of the insured business.

Finally, even were we to adopt appellants' position and extend coverage to the immediate, injury-producing act, regardless of whether it deviates from the scope of the insured's business, so long as the principal activity of the insured is the conduct of his business, respondent must still prevail. Vermont Isaacson's deposition testimony indicates that he may well have attended the races for a dual purpose—to conduct his business and celebrate the

Fourth of July. Asked why he brought the fireworks to the races, he responded: "I brought them for my own private, personal use celebrating the fourth of July." Although Isaacson testified that he was available for work at the time of the accident, we cannot help but observe that the races were concluded and a fireworks display about to begin.

In order to impose liability under the policy, the insurer must have been able to reasonably foresee the liability-producing conduct as emanating from the insured's business. We fail to see how the company could possibly have foreseen that the insured would engage in the shooting of fireworks and in the injuring of an innocent bystander, all while claiming to be in the pursuit of the welding business.

In Associated Ind. Dealers v. Mutual Serv. Ins. Cos. 304 Minn. 179, 229 N. W. 2d 516 (1975), we held that a fire resulting from the negligent use of an acetylene torch did not "arise out of the ownership, maintenance, or use" of an automobile under an automobile liability policy by reason of the mere fact that part of the acetylene cutting equipment fortuitously remained inside the insured van which had been used to transport the equipment to the work site.

Here, also, the mere fact that Isaacson was on the race track to perform business pursuits does not mean that the policy would cover him for any type of activity regardless of what that might be. We might reach a different result if in the welding process itself Isaacson were to have become careless with the use of the torch and engaged in horseplay with that equipment, but we hardly see where the firing of fireworks or rockets has any connection whatever with the conduct of his business.

Affirmed.