Kenneth BLAIR, Appellant,

v.

CITY OF WINCHESTER, Ed Burtner and Robert N. Monroe, Appellees.

No. 86–CA–2455–MR.

Court of Appeals of Kentucky.

Sept. 4, 1987.

Rehearing Denied Oct. 30, 1987.

Discretionary Review Denied By Supreme Court Jan. 12, 1988.

Dennis Franklin Janes, John Frith Stewart, Jonathan C. Hardy, Segal, Isenberg, Sales, Stewart and Cutler, Louisville, for appellant.

O. Lee Cave, III, Clark, Ward & Hopgood, Lexington, Edsel T. Jones, Winchester, for appellees.

Before CLAYTON, McDONALD and MILLER, JJ.

McDONALD, Judge:

The appellant, Kenneth Blair, has appealed from the judgment of the Clark Circuit Court which affirmed the decision of the Board of Commissioners of the appellee, City of Winchester, to terminate Blair's employment as a firefighter. The city's purported reason for firing Blair was that a work-related injury had left him physically unable to properly perform the work of a fireman. Blair indeed suffered a back injury while attempting to put out a fire in January, 1984. He had not yet been released by his physician to return to work when, on October 9, 1984, he attended a meeting of the City Board of Commissioners and publicly criticized the fire chief, appellee Robert N. Monroe and a city manager, Ed Burtner, for sending a half-million-dollar fire truck to a parade in Lexington. On October 10, 1984, Blair was ordered back to work by the chief and reinjured his back while stepping off a truck on October 18, 1984. He attempted to secure light duty work after this injury but was not allowed to work again.[1] On December 7, 1984, Monroe filed charges against Blair with the clerk of the City of Winchester and a hearing before the Board of Commissioners commenced on December 11th. In its order the board found that Blair "was off duty almost the entire year of 1984," that his disability would continue "at least another year," and thus concluded that he was "guilty of inefficiency."

Blair appealed this action to the Clark Circuit Court. In his petition for appeal and complaint, Blair not only sought review of the alleged errors of the board, but also included a complaint against Burtner and Monroe, individually and in their respective official capacities, pursuant to 42 U.S.C. §§ 1983 and 1985. Blair claimed the true reason for his discharge was to punish him for exercising his First Amendment rights of free speech and association.

The appellees moved the court to dismiss the individually named defendants, Burtner and Monroe, and at a motion hour to which Blair's counsel was not provided notice, the court sustained the motion. The court eventually set aside that order but upon

1. That there was a past practice of allowing disabled firefighters who had sustained similar disabilities to work as drivers or dispatchers was amply demonstrated by appellant's evidence.

reconsideration sustained the motion to dismiss these two appellees, determining as a matter of law that they could not have violated 42 U.S.C. § 1983 *et seq.* The court concluded as follows: "The legislative body of the City is the only entity that can accomplish a termination; and no individual, either acting alone or in concert with others, may effect the same."

After a quasi de novo hearing on November 12, 1985, on the appeal the trial court waited until September 4, 1986, before entering its findings of fact, conclusions of law and judgment. The court concluded that the evidence did not preponderate against the city's action and that the city did not act arbitrarily in dismissing Blair. It is from this judgment that Blair has appealed.

■ The appellant's major contention in this appeal is that the city may not lawfully discharge him for the reason that he is physically unable to perform the work due to an on-the-job injury. KRS 95.450(1) provides as follows concerning the discipline of firefighters such as Blair:

> [N]o member of the police or fire department in cities of the second and third classes or urban-county government shall be reprimanded, dismissed, suspended or reduced in grade or pay for any reason except *inefficiency, misconduct, insubordination or violation of law* or of the rules adopted by the legislative body, and only after charges are preferred and a hearing conducted as provided in this section. [Emphasis added.]

Blair contends that the section mandates that as a matter of law a firefighter cannot have adverse employment action taken against him unless he has committed an *intentional* wrongdoing. Blair relies on *White v. City of Hopkinsville*, 280 Ky. 661, 134 S.W.2d 236, 238 (1939), which, in discussing the predecessor to KRS 95.450, held that the legislature intended that policemen and firemen be removed "from the contaminating influence of local politics and to thereby guarantee efficiency in service and to assure incumbents of the stability of their positions as long as they were *guilty of no dereliction* of duty or other act authorizing and justifying their removal." (Emphasis added.) Blair insists that as he was off work due to a work-related back injury, he was not "guilty" of such dereliction or of any intentional act or misconduct as contemplated by KRS 95.450(1) as is necessary to prefer charges. We disagree with his interpretation of this statute.

Although the other grounds for adverse employment action in the statute clearly imply wrongdoing, we believe the term "inefficiency" to be distinct from misconduct. We find appropriate the definition of this term contained in *McCallister v. Priest*, 422 S.W.2d 650, 657 (Mo., 1968). It defines "inefficiency" as "the quality of being incapable of doing, or indisposed to do, the things required of an officer." It appears arbitrary and unjust to the appellant that his job required that he put his life in jeopardy to protect the citizens of Winchester and that having incurred an injury doing so, he is not allowed to continue working in another capacity.[2] It is nevertheless reasonable that the city would desire firefighters who are physically able to function in that capacity. Thus we affirm the trial court's ruling that the city had a legal cause to dismiss Blair from his position as firefighter.

Next Blair argues that he was not given all the benefits to which he was entitled under the city's personnel policy No. 240(II)(13). This policy provides that an employee who is injured on the job is to be compensated at full salary for two months.[3] After this period, if the employee requests, he is to continue on leave at full salary, such leave to be charged against the employee's accrued vacation and/or sick leave.

---

2. We believe the proof that others were not so harshly dealt with bears not on whether the firing was arbitrary but speaks to the issue of the real motive of those responsible for firing Blair. See further discussion herein.

3. The city makes up any difference between the employee's full salary and workers' compensation benefits, if any.

As Blair was reinjured in October, 1984, after being ordered back to work by Monroe, he was entitled to two months paid leave, after which he still had in excess of 500 hours of accrued leave to utilize. Blair, however, was dismissed before the initial two-month period expired and complains that he was denied the salary benefits provided under this policy. The city offered no proof that Blair had been paid for this time. Although this issue was squarely before the trial court, it made no findings in this regard. Therefore, on remand the trial court is instructed to determine what benefits, if any, are remaining to be paid to the appellant under this policy.

■ The appellant's argument that the hearing was not held within three days after the charges were filed as required by KRS 95.450(3) is without merit. The record indicates the meeting was held within three working days. Likewise the argument that the board violated the open meetings statute, KRS 61.815, by deliberating in a closed session is meritless. *Carter v. Craig*, Ky.App., 574 S.W.2d 352 (1978).

■ Finally, we do agree with the appellant that the trial court erred in dismissing his federal civil rights case. As stated before, Blair alleged that he was discharged from his public job in retaliation for his exercise of his freedom of speech. Despite the fact that the city articulated and proved it had a legal reason for firing Blair, he is entitled to a determination that his protected speech was "a 'substantial factor'—or, to put it in other words, that it was a 'motivating factor,'" in the board's decision to fire. *Mt. Healthy City Board of Ed. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Reichert v. Draud*, 701 F.2d 1168 (6th Cir.1983). We believe that Blair is entitled to recover from these defendants if in fact his termination was only "partially in retaliation for the exercise of a constitutional right...." *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir.

1975). Simply that the city had a legitimate reason for firing Blair does not require the conclusion that the firing was constitutionally permissible. To the contrary, it is for the jury to determine whether the city's purported legitimate and constitutional reason for firing Blair is worthy of credence or if the real motive was to punish Blair for publicly criticizing the chief and city manager.

The appellees do not address the merits of this issue in their brief other than to reiterate the trial court's conclusion that they could not effectuate Blair's firing.[4] Such an argument, however, demonstrates a lack of understanding of the basic elements of and necessity for our civil rights laws. It was alleged that Monroe and Burtner conspired together to cause Blair to lose his job. That it took formal board action to fire Blair does not insulate these individuals from being accountable under 42 U.S.C. § 1983 for their roles in Blair's claims of constitutional deprivation.

■ The appellees assert that Blair has waived this issue by failing to name the interlocutory judgment dismissing his civil rights action in his notice of appeal. It is well settled, however, that one can only appeal from a final judgment and that all interlocutory orders or judgments are "re-adjudicated finally" upon entry of a final judgment disposing of all issues making it unnecessary to name any judgment in the notice of appeal other than the final one. *Employers' Liability Assurance Corp. v. Home Indemnity Co.*, Ky., 452 S.W.2d 620 (1970). The appellees further fault Blair for combining such a complaint with a petition for appeal from an administrative agency. They rely on those cases which hold that one must strictly comply with legislatively mandated procedures for taking an appeal. They do not, however, inform us how Blair did not "strictly" comply with the applicable statute, KRS 95.460. That he included a separate complaint in his petition for appeal does not, we believe, take away from the appeal nor do the ap-

---

4. It was, of course, Monroe who ordered Blair back to work the day following the town meeting in which Blair criticized Monroe and Burt-ner, and Monroe who ultimately proffered charges against Blair resulting in his firing.

pellees explain how the appeal was in any way tainted by the complaint. Although Blair may now wish he had filed his federal civil rights claim in federal district court, he may have believed it would have been more efficient to leave all his claims arising from his firing consolidated in one forum.

The judgment of the Clark Circuit Court is affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

All concur.

