529 N.W.2d 406 (1995)
Anthony ROHRER, et al., judgment creditors, Appellants,
v.
Timothy RICK, judgment debtor, Respondent, and
The Travelers Companies, garnishee, Respondent.
No. C9-94-1934.
Court of Appeals of Minnesota.
March 21, 1995.
Marshall H. Tanick, Catherine M. Klimek, Mansfield & Tanick, P.A., Minneapolis, for appellants.
Thomas R. Hughes, Hughes & Costello, St. Paul, for Timothy Rick.
Paul D. Peterson, Shawn M. Raiter, King & Hatch, P.A., St. Paul, for The Travelers Companies.
Considered and decided by NORTON, P.J., and PETERSON and MANSUR,[*] JJ.

OPINION
NORTON, Judge.
After stipulating to settlement of their tort claim against respondent Timothy Rick, appellants *407 commenced collection proceedings against Rick's homeowner's insurance carrier, respondent The Travelers Companies. Appellants challenge the district court's denial of their motion seeking leave to file a supplemental complaint against Travelers, arguing that the court erroneously concluded that they failed to show probable cause that Travelers would be liable under the policy for injuries caused by Rick's harassing telephone calls. We affirm.

FACTS
This case arises out of a series of anonymous telephone calls that respondent Timothy Rick made to the home of appellants Anthony and Susan Rohrer. The telephone calls were of the "hang up" variety, where Rick would not speak after appellants answered the telephone, but after several seconds of delay, Rick would hang up. Rick placed these "hang up" calls for approximately 40 days in March and April of 1992.
Anthony Rohrer contacted the Washington County Sheriff's Office and complained that he and his wife had received "hundreds of phone calls from an anonymous caller" over a period of three to four weeks. Telephone trace records for March 28, 1992, revealed that calls were made from Rick's residence to the Rohrer residence at 1:59 a.m., 2:30 a.m., 2:59 a.m., 3:06 a.m., 3:16 a.m., 3:50 a.m., and 4:45 a.m.
When confronted by the sheriff's department, Rick admitted that he made the calls. He explained that he was a member of Local # 455 of the Pipefitters Union, that Anthony Rohrer was their business agent, and that he was upset with Rohrer's handling of the union contract. Rick pleaded guilty to making "harassing telephone calls" in violation of Minn.Stat. § 609.79, subd. 1(1)(b), (c) (1990).
The Rohrers commenced a civil suit against Rick, alleging that his "harassing and terroristic telephone calls" to them had caused them damage. As a result of Rick's telephone calls, Susan Rohrer allegedly suffered nausea, inability to eat, loss of weight, extreme nervousness and stress, loss of sleep, and twitching of her eyes and face. Their claim against Rick included claims of trespass, nuisance, intentional infliction of emotional distress, negligence, invasion of privacy, and assault. Rick tendered the defense of the suit to his homeowner's insurance carrier, respondent The Travelers Companies (Travelers), but Travelers declined to defend Rick.
In a deposition, Rick acknowledged making the telephone calls, he said that he sought to reach Anthony Rohrer, not his wife, and he stated that he did not intend to injure them by the telephone calls.
When the case was called for trial, Rick and the Rohrers reached a settlement agreement that provided, in part, that Rick was liable to the Rohrers for $49,000, that he would pay $9,000 of that amount, and that the balance would be subject to collection from Travelers. Rick and the Rohrers stipulated that the telephone calls were "harassing." Based upon stipulated facts, the trial court included the following finding of fact in its judgment:

2. Defendant Rick acted negligently, but with no intent to cause injury to either of [the] Plaintiffs as a result of these telephone calls.
The Rohrers began collection proceedings against Travelers. Travelers denied liability and the Rohrers then moved the court for leave to serve and file a supplemental complaint. Travelers filed a notice to remove the trial judge who presided over the settlement proceedings. Another judge then heard and denied the Rohrers' motion. This appeal followed.

ISSUE
Did the district court err in determining that no probable cause existed to believe the insurer would be liable for injury caused by the insured's harassing telephone calls?

ANALYSIS
The Rohrers sought leave of the court to file a supplemental complaint against Travelers pursuant to Minn.Stat. § 571.75, subd. 4 (1992). The court must grant a motion to file a supplemental complaint if probable cause is shown that the garnishee will be liable for the judgment debt. Id. A finding of probable *408 cause in an insurance case "depends on whether the evidence shows probable grounds for believing that the garnishee might be held liable under the policy." Poor Richards, Inc. v. Chas. Olson & Sons & Wheel Serv. Co., 380 N.W.2d 225, 227 (Minn. App.1986) (quoting Gudbrandsen v. Pelto, 205 Minn. 607, 610, 287 N.W. 116, 117-18 (1939)).[1] Probable cause is defined as "some showing by evidence which fairly and reasonably tends to show the existence of the facts alleged." Id. (quoting Gudbrandsen, 205 Minn. at 609, 287 N.W. at 117).
The Rohrers contend that the district court misconstrued coverage provisions in the Travelers policy and misapplied the law when it determined there was no probable cause shown that Travelers may be liable under the policy. We disagree.
"[I]nterpretation of insurance contract language is a question of law as applied to the facts presented." Meister v. Western Nat'l Mut. Ins. Co., 479 N.W.2d 372, 376 (Minn. 1992). Where there is no dispute of material fact, this court independently reviews the lower court's interpretation of an insurance contract. National City Bank v. St. Paul Fire & Marine Ins. Co., 447 N.W.2d 171, 175 (Minn.1989).
An insurance policy is a contract, the terms of which determine both the rights and obligations of the contracting parties. In construing an insurance policy, the paramount question is what hazards the parties intended to cover. In effectuating that intent, the words used must be understood in their ordinary and popular sense.
Employers Mut. Casualty Co. v. Kangas, 310 Minn. 171, 174, 245 N.W.2d 873, 875-76 (1976).
Under the terms of Rick's homeowner's policy, Travelers is only liable "for damages because of `bodily injury' or `property damage' caused by an `occurrence.'" The Rohrers argue that the district court misconstrued and misapplied the term "occurrence" when it determined that Rick's pattern of phone calls and the resulting injuries to Susan Rohrer did not, as a matter of law, constitute an occurrence under the Travelers policy. We disagree.
The Travelers policy defines "occurrence" as
an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
a. "bodily injury"; or
b. "property damage."
Thus, an occurrence under the Travelers policy requires two conditions: (1) an accident, (2) resulting in bodily injury or personal injury.
The Travelers policy does not define "accident." Caselaw in this state has defined accident as an "unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause." Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 358-59, 65 N.W.2d 122, 126 (1954), quoted in Sage Co. v. Insurance Co. of N. Am., 480 N.W.2d 695, 698 (Minn.App.1992).
Travelers argues that our decision in Sage Co. should guide our decision here. In that case, we held that an employer's intentional discharge of an employee "was the antithesis of an accident," and was thus not an occurrence under the employer's insurance policy. Sage Co., 480 N.W.2d at 698. The Rohrers contend that Sage Co. is distinguishable because in that case the employer's action was taken after much deliberation, with a clear and unmistakable result, whereas the stipulated facts here are that Rick acted negligently and did not intend, expect, or foresee that his phone calls would cause injury. Cf. Bituminous Casualty Corp. v. Bartlett, 307 Minn. 72, 77 n. 5, 240 N.W.2d 310, 313 n. 5 (1976) (term "accident" may include negligent acts of insured), overruled on other grounds, Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn.1979); see also Milbank Ins. Co. v. B.L.G., 484 N.W.2d 52, 58 (Minn.App.1992) (insurance company may be liable for injuries related to the negligent *409 transmission of genital herpes), pet. for rev. denied (Minn. July 16, 1992). We disagree.
The stipulated findings that Rick acted negligently and that he did not intend to injure the Rohrers have no legal impact against the insurer here. The Rohrers' reliance on Minn.R.Civ.P. 52.01 is unfounded. That rule requires deference to findings of fact where an action has been "tried upon the facts." Id. There were no disputed facts before the trial court when it accepted the stipulation of Rick and the Rohrers; the underlying action here was not "tried upon the facts." Further, Rick and the Rohrers stipulated as to the negligence claim, whereas the Rohrers had claimed various other theories of recovery in their complaint. They cannot by mere stipulation bind the insurer to the negligence theory of liability. Because negligence and intent to injure were not essential issues in the determination of Rick's liability, Travelers may relitigate the issue. Cf. Brown v. State Auto. & Casualty Underwriters, 293 N.W.2d 822, 825 (Minn. 1980) (resolution of issue in prior action must have been "necessary and essential" to preclude relitigation).
We hold that the pattern of calls made by Rick is the antithesis of an "accident." See Sage Co., 480 N.W.2d at 698 (holding that firing of employee was, as a matter of law, not an accident); see also Gilman v. State Farm Fire & Casualty Co., 526 N.W.2d 378, 383 (Minn.App.1995) (affirming judgment where jury determined that insured's tackling of victim without his consent was not an accident even though insured had no intent to injure; "proper analysis" is whether the wrongful act or tortious event was an accident).
Even if Rick's acts constituted negligence, there was no insurable "occurrence" here as a matter of law. Although damages resulting from negligence are generally not excluded by policies that insure against liability for damage caused by an "accident," this rule applies to "ordinary" negligence. Johnson v. AID Ins. Co., 287 N.W.2d 663, 665 n. 2 (Minn.1980). Contrary to Rohrers' argument, Rick's conduct did not fall within the "ordinary negligence" category despite his alleged lack of intent to harm them. "[A]n insured will not be allowed through intentional or reckless acts to consciously control the risks covered by the policy." Id. at 665 (emphasis added).
The Rohrers correctly note that Rick's guilty plea to making "harassing telephone calls" in violation of Minn.Stat. § 609.79 (1990) is not conclusive evidence of intent to harm them. See Glens Falls Group Ins. Corp. v. Hoium, 294 Minn. 247, 251, 200 N.W.2d 189, 192 (1972) (insured's plea of guilty is not conclusive evidence that the insured committed intentional tort because he may have pleaded guilty for other reasons than his actual guilt). Nevertheless, we may infer intent to injure as a matter of law from the nature of Rick's acts. Smith v. Senst, 313 N.W.2d 202, 203 (Minn.1981).
Here, Rick was admittedly angry with Anthony Rohrer for his actions in negotiating a union contract. Rick made dozens of admittedly "harassing"[2] telephone calls to the Rohrer home throughout the night regardless of who answered the telephone. On these facts, we infer intent to harm as a matter of law. Cf. Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 887 (Minn.1978) (court may infer intent to injure, as a matter of law, if "the character of the act is such that an intention to inflict an injury can be inferred"). The allegedly unexpected extent of injuries suffered by Susan Rohrer does not preclude a determination that Rick intended injury. See id. (coverage excluded even though "the severe resulting injury was clearly not anticipated or intended").
The Rohrers' reliance on Towers Ins. Co. v. Judge, 840 F.Supp. 679 (D.Minn.1993) is unfounded. In that case, the court determined that a "prank" that resulted in the electrocution of the insureds' intoxicated friend was not "calculated and remorseless." Id. at 691. Because the insureds had proceeded only after assessing the danger, the court determined that harm to the friend was *410 not "substantially certain to occur." Id. Accordingly, the court refused to infer intent to cause injury as a matter of law. Id. In this case, there is no evidence that Rick assessed the situation and determined that his actions would not harm the Rohrers. Further, Judge involved an isolated, albeit fatal, incident, but Rick's conduct was repeated dozens of times. Finally, Rick admitted that the telephone calls were harassing and that he made them because he was upset over a union contract that appellant Anthony Rohrer had negotiated. No such evidence of motive or intent existed in Judge, where the insureds accidentally electrocuted their friend.
The Rohrers contend that the question of intent to harm is an issue for the trier of fact because Rick made the telephone calls as "an unthinking reaction to his frustration with the ongoing labor contract negotiations." We disagree. The facts here cannot compare to cases where an insured acted instinctively in the form of a reflex or in self-defense. Cf. Farmers Ins. Exch. v. Sipple, 255 N.W.2d 373, 377 (Minn.1977) (intent to harm was issue for jury where insured testified that he struck other instinctively and in self defense); Caspersen v. Webber, 298 Minn. 93, 98-99, 213 N.W.2d 327, 330 (1973) (refusing to infer intent to injure where insured lightly pushed injured party when she refused to let him into the coatcheck room). Rick's behavior was repeated on dozens of occasions, and was calculated and purposeful.
Finally, our decision that Rick's repeated harassing telephone calls cannot, as a matter of law, constitute an "occurrence" under his homeowner's policy is consistent with public policy. See Stone, 269 N.W.2d at 887 (acknowledging "public policy against `licensing' intentional and unlawful harmful acts"). Because we conclude there was no "occurrence" under the insurance contract, we do not reach the issue of whether coverage is excluded under the intentional acts exclusion clause.

DECISION
The repeated harassing telephone calls that Rick made to the Rohrers' home do not constitute an occurrence under the terms of his homeowner's insurance policy. The district court did not err when it denied appellants leave to file a supplemental complaint.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.
[1] Poor Richards involved Minn.Stat. § 571.51 (1984), which has since been repealed and replaced by Minn.Stat. § 571.75. 1990 Minn.Laws ch. 606, art. 3 §§ 7, 39. The relevant provisions in these statutes are substantially the same.
[2] Rick and the Rohrers stipulated in the underlying tort proceeding that the telephone calls were "harassing."