Cowin, J.
This matter is before the court on plaintiff Sentry Insurance Co.’s (“Sentry”) motion for summary judgment on its declaratory judgment action. Plaintiff seeks a declaration that it is not obliged to indemnify its insured, defendant Eric S. Sahlberg (“Sahlberg”), for claims arising in an underlying negligence action involving injuries incurred by one Bunker Davis on playground equipment which Sahlberg, on a volunteer basis, helped to fabricate.
Defendants Commerce Insurance Co. (“Commerce”) and Insurance Company of North America (“INA”) oppose such a declaration.[2] They claim that *472 defendant Sahlberg’s conduct in participating in a town effort to build a playground is activity “with respect to the conduct of a business” and is, therefore, covered by the General Liability Insurance policy issued to Sahlberg by Sentry.
BACKGROUND
The summary judgment record consists of the second amended complaint in the underlying action,[3] portions of the January 26, 1993 deposition of Sahlberg taken pursuant to the underlying action, a copy of the Sentry General Liability Policy issued to Sahlberg, a copy of the Homeowners Policy issued by Commerce to Sahlberg and Sahlberg’s November 17, 1994 affidavit.[4]
The undisputed material facts contained in the record reveal the following. On February 12, 1989 Bunker Davis sustained personal injuries when he fell from a playground structure located at the Pompositticut School, in Stow, Massachusetts. The structure was designed and constructed in or around 1984 by the Town of Stow through the use of donations and volunteer assistance.
Defendant Sahlberg is a licensed plumber and the sole proprietor of an entity known as Eric S. Sahlberg Plumbing & Heating, a business which he operates from his home in Stow. In 1984 the Town of Stow began soliciting the community for donations of money, time and materials for the construction of a playground structure at the Pompositticut School. Robert Ticknor, a member of the playground committee, approached Sahlberg and asked if Sahlberg could provide some cut pipe for use in the project. Ticknor later met with Sahlberg, at Sahlberg’s home, and discussed details of the project. Sahlberg then fabricated “firemen’s poles,” brackets and a ladder from black steel pipe and angle iron, and he delivered these items to the school site in his business vehicle. Ticknor and Sahlberg never discussed payment for Sahlberg’s work or materials, nor did Sahlberg expect payment. His participation was voluntary.
Bunker Davis sustained personal injury when his head struck a bracket fabricated by Sahlberg. At the time of the accident Sahlberg was insured by Sentry under a general liability policy and by Commerce under a homeowners policy. The Town of Stow was insured by INA under a business package policy which provided coverage for the Town’s liability arising from Sahlberg’s participation in the playground project.
Commerce and INA concede that their respective policies obligate them to indemnify Sahlberg but contend that their coverage is excess to that provided by the Sentry policy. Sentry asserts that it is not obligated to indemnify Sahlberg under the terms of its policy.
The Sentry policy provides coverage as follows:
Coverage Part — Completed Operations and Products Liability Insurance
I. Coverage A — Bodily Injury Liability
CoverageB — Property Damage Liability
The company will pay on behalf of the “insured” all sums which the “insured” shall become legally obligated to pay as damages because of
Coverage A. “bodily injury” or Coverage B. “properly damage”
to which this insurance applies, caused by an “occurrence” if the “bodily injury” or “property damage” is included within the “completed operations hazard” or the “products hazard,” and the company shall have the right and duty to defend any suit against the “insured” seeking damages on account of such “bodily injury” or “property damage,” even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
II. Persons Insured
Each of the following is an “insured” under this insurance to the extent set forth below
(a) if the “named insured” is designated in the declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor (emphasis added) . . .
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pedersen v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Sentry contends that there is no coverage under its policy because Sahlberg is not an insured as defined by the policy. Under the terms of the policy Sahlberg is considered an insured only with respect to the conduct of a business of which he is the sole proprietor. No coverage exists under the Sentry policy for claims arising from activity which is not considered “conduct of a business.”
The interpretation of the term “conduct of a business” as it appears in a general liability policy has not been addressed by the courts of this Commonwealth. The Supreme Judicial Court of Minnesota, however, in Employers’ Mutual Ins. Co. v. Kangas, 245 N.W.2d 873 (Minn. 1976), has addressed identical language from a general liability policy. In its discussion of whether the insured’s conduct was within the scope *473 of his business, the Kangas Court held that “ [i)n order to impose liability under the policy, the insurer must have been able to reasonably foresee the liability-producing conduct as emanating from the insured’s business.” Id. at 877. The Court, in construing the policy in Kangas, held that “the paramount question is what hazards the parties intended to cover.” Id. at 875.
The policy at issue in the instant case was issued to Sahlberg in his capacity as sole proprietor of his business, Eric. S. Sahlberg Plumbing & Heating.[5] The conduct giving rise to the injuries in the underlying action was Sahlberg’s fabrication of parts of a playground structure. This activity was performed on a voluntary basis, for which Sahlberg donated his time and materials. This work was not performed in the conduct of a plumbing and heating business nor were the items fabricated for plumbing or heating purposes. The accidental nexus between Sahlberg’s use of business materials and this non-business purpose does not render his activity one in “the conduct of a business.” As such, Sentry reasonably would not have expected that they were insuring Sahlberg for injuries resulting from volunteer activities unrelated to his plumbing and heating business.
Other jurisdictions have interpreted similar language regarding “business pursuits” to encompass the elements of “continuity or customary engagement in the activity” and a “profit motive” in performing such activity. Sun Alliance Insurance Co. of Puerto Rico v. Soto, 836 F.2d 834, 836 (3rd Cir. 1988); Haley v. Allstate Insurance Co., 529 A.2d 394, 396 (N.H. 1987).[6]
Although these cases interpret the term “business pursuit” rather than the “conduct of a business,” the two terms are sufficiently similar that these cases provide additional guidance. Under these interpretations of the term “business pursuit,” the activity in the instant case is not one in “the conduct of a business.” Sahlberg was not customarily or continuously engaged in the fabrication of playground equipment nor did his involvement in this instance reveal any clear profit motive.
ORDER
Based upon the foregoing it is hereby ORDERED that plaintiffs motion for summary judgment is ALLOWED. It is further DECLARED that Eric S. Sahlberg’s activity in fabricating the playground structure is not an activity covered by the General Liability Insurance policy issued to him by Sentry and, therefore, Sentry is not obliged to indemnify Sahlberg for damages resulting therefrom.

tyhe underlying case has been settled. Sentry, Commerce and INA all contributed equally to the settlement of Sahlberg’s portion of the total payment, agreeing that they would subsequently litigate Sentry’s obligation to indemnify Sahlberg. It is this matter which is now before this court.

Bunker Davis, et al. v. Robert Ticknor, et al., C.A. No. 92-0323 (Middlesex).

Sentry and INA have each moved to strike separate affidavits provided by Sahlberg. The first affidavit, signed on November 17, 1994, was submitted by INA with its opposition to Sentry’s motion for summary judgment. The second affidavit, signed on January 6, 1995, was submitted by Sentry in a motion to strike the first affidavit. The second affidavit was not submitted for purposes of summary judgment, but only to strike the first affidavit.
INA has moved to strike the second affidavit. Although the affidavits reveal certain inconsistencies in Sahlberg’s account of relevant matters, the basic contentions of both affidavits are the same. For this reason I will strike neither affidavit.

The declarations page lists only Sahlberg as an individual. This is consistent with the policy language in §II(a) — Persons Insured.

These cases cited involve interpretation of a commercial multi-peril policy (Soto) and a homeowners policy [Haley).