[No. H005255. Sixth Dist. Mar. 13, 1990.]

STATE FARM FIRE & CASUALTY COMPANY, Plaintiff and Respondent, v.
MARK EDDY et al., Defendants and Appellants.

**COUNSEL**

Emanuel & Ince, Larry J. Ince and Gerald A. Emanuel for Appellants and Defendants.

Michael J. Brady, Stacey L. Pratt, and Ropers, Majeski, Kohn, Bentley, Wagner & Kane for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Appellants Mark Eddy and Carol Greenstreet appeal from a grant of summary judgment to respondent State Farm Fire & Casualty Co. (hereafter, State Farm). State Farm had brought an action for declaratory relief for a determination whether it had the duty to defend or indemnify Eddy for the infliction of genital herpes on Greenstreet by way of voluntary sexual intercourse. We reverse.

### FACTS

Eddy was insured by State Farm under a homeowner's policy in effect on February 14, 1986, when he and Greenstreet met and began dating. Greenstreet alleged in her complaint that before any sexual contact, she told Eddy that she was concerned about sexually transmittable diseases, particularly herpes. On March 14, 1986, they engaged in voluntary sexual intercourse. On March 22, Eddy told Greenstreet that he had a history of herpes, but that he did not believe he was contagious. On March 27, Greenstreet was diagnosed as having herpes.

In 1980, Eddy had dated a woman who he believed had herpes, and from whom he thought he might have contracted it. He had required medical treatment in 1980. On May 24, 1985, he again sought treatment and was examined at Kaiser Hospital in Santa Clara. The treating physician told Eddy that there was no way of knowing whether he had herpes without a positive viral culture. The culture was taken on June 3, 1985, and Eddy was told it was "negative." Nobody told him he could have the disease even though the culture was negative. He thereafter believed he did not have herpes.

### PROCEDURAL BACKGROUND

Greenstreet filed suit against Eddy on November 3, 1986, alleging general negligence, battery, fraud, and intentional or negligent infliction of emotional distress. She also requested punitive damages.

Eddy notified State Farm, which agreed to defend him, although expressly reserving its rights to deny indemnity. Thereafter, State Farm filed an action for declaratory relief, contending that it had neither the duty to defend nor to indemnify because the conduct and damages alleged by Greenstreet were excluded under the insurance policy, or by Insurance Code section 533. The trial court agreed with State Farm and granted summary judgment. This appeal ensued.

## CONTENTIONS ON APPEAL

Appellants dispute all of the grounds State Farm advanced in support of its contention that it had no duty to defend or indemnify Eddy. State Farm had claimed first, that the insured's transmission of a venereal disease violated Health and Safety Code section 3198 and arose out of his fraud.[1] Second, the transmission of a venereal disease was a peril that was not covered by the policy. Third, liability arising from sexual misconduct fell within the intentional acts exclusion. Fourth, coverage for sexual misconduct was eliminated by Insurance Code section 533 and Civil Code section 1668.[2] And fifth, coverage for sexual misconduct violated public policy.

Additionally, appellants claim that the court erred in excluding evidence of State Farm's modification of certain language in its homeowner's policy, and in ruling that the issue whether Eddy believed in good faith that he did not have herpes was of no consequence to State Farm's duty to defend or indemnify.

## THE POLICY

Eddy's homeowner's policy included coverage for personal liability (Coverage L). Coverage L provided: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, we will: [¶] (1) pay up to our limit of liability for the damages for which the insured is legally liable; and [¶] (2) provide a defense at our expense by counsel of our choice. . . . Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability." The policy excluded "bodily injury which is expected or intended by an insured[.]" Bodily injury was defined to mean "harm, sickness or disease."

## SCOPE OF REVIEW

■ Summary judgment is an appropriate means for determination of coverage under an insurance policy where there is no material issue of fact to be tried and the sole issue is one of law. (*Pepper Industries, Inc.* v. *Home*

---

[1] The pertinent language of Health and Safety Code section 3198 declares it a misdemeanor to expose or infect any person with any venereal disease.

[2] Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others."

Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

*Ins. Co.* (1977) 67 Cal.App.3d 1012, 1017 [134 Cal.Rptr. 904].) Even where a factual dispute exists, this will not preclude entry of summary judgment, unless that fact is material. (*Hidalgo* v. *Anderson* (1978) 84 Cal.App.3d 378, 381 [148 Cal.Rptr. 557].) ■ A grant of summary judgment is reviewed de novo by the Court of Appeal. (*D'Aquisto* v. *Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108].) The interpretation of an insurance policy is a question of law, and the appellate court has the duty to make an independent determination of the meaning of the language used in the contract under consideration. (*Fragomeno* v. *Insurance Co. of the West* (1989) 207 Cal.App.3d 822, 827 [255 Cal.Rptr. 111].)

## DUTY TO DEFEND

■ Appellants contend that although a determination on the merits might show that there was intentional conduct for which State Farm need not indemnify Eddy, the complaint alleged both negligent and intentional torts; therefore, State Farm must defend since potentially it could be required to indemnify for Eddy's negligence. We agree.

"An insurer's duty to defend is separate from its duty to indemnify. [Citation.] The fact that an insurer may ultimately not be liable as the indemnifier of the insured does not establish that it has no duty to defend. The duty to defend is broader than the duty to indemnify and is measured by the reasonable expectations of the insured. [Citations.] Accordingly, '[a]n insurer is not absolved from its duty to *defend* the lawsuit merely because it is forbidden by law or contract to indemnify the liability-causing action.' [Citation.] [¶] 'An insurer, bound to defend an action against its insured, must defend against all of the claims involved in that action, even though some . . . of them ultimately result in recovery for damages not covered by the policy.' [Citation.]" (*Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 943-944 [208 Cal.Rptr. 806].) "An insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168], italics added.)

■ The language of the policy must be interpreted "according to the layman's reasonable expectations . . . ." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 274, fn. omitted.)

■ In the instant case, the language of the policy declared that State Farm would provide a defense if a suit was brought against Eddy for damages because of bodily injury "to which the coverage applies." "Bodily injury" included disease; the claim was for damages for harm resulting from

a disease. (*Kathleen K.* v. *Robert B.* (1984) 150 Cal.App.3d 992, 996-997, fn. 3 [198 Cal.Rptr. 273, 40 A.L.R.4th 1083].) Furthermore, the only limit on the duty to defend that the policy stated arose when damages to the limit of liability were paid out. No damages had been paid out by State Farm on Greenstreet's claim. Clearly these promises, without further clarification, would lead the insured reasonably to expect the insurer to defend him against this suit. (See *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 272.)

■ Moreover, although State Farm argued that the policy excluded coverage for bodily injury which was "expected or intended" by an insured, Eddy's declaration in opposition to the motion for summary judgment indicated that the infliction of the disease was not expected or intended, even though the intercourse was. The tort is the transmission of disease, not the consensual sexual relations. (See discussion, *infra.*) "[N]otice of noncoverage of the policy, in a situation in which the public may reasonably expect coverage, must be conspicuous, plain and clear.' [Citation.]" (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 271.)

Therefore, it was error for the court to rule there was no duty to defend.

### DUTY TO INDEMNIFY

#### 1. Violation of Law

Next, appellants contend that Eddy's conduct did not amount to violation of law or fraud so as to defeat coverage.

■ State Farm had argued to the trial court that Eddy fraudulently induced Greenstreet to consent to intercourse, and that he committed the misdemeanor of infecting Greenstreet with a venereal disease in violation of Health and Safety Code section 3198. (See *ante,* fn. 1.) Because of this, the insurance contract was made unenforceable by Civil Code section 1668 (*ante,* fn. 2), which declares that all contracts which have for their object to exempt a person from responsibility for certain conduct, including fraud and violation of law, are against the policy of the law.[3]

Appellants took the approach that since genital herpes is not one of the diseases listed in Health and Safety Code section 3001,[4] its transmission is

---

[3] Future statutory references are to the Civil Code unless otherwise stated.

[4] Health and Safety Code section 3001 provides: "As used in this division [sections 3198 and 3001 are both in division 4], 'venereal diseases' means syphilis, gonorrhea, chancroid, lymphopathia venereum, and granuloma inguinale."

not made a crime by Health and Safety Code section 3198 and, therefore, section 1668 does not apply.

We need not decide whether the Legislature intended to make criminal the transmission of venereal diseases which are not listed in Health and Safety Code section 3001. The crux of the matter lies in the distinction between "an *exemption* (§ 1668) whereby a person seeks to avoid liability to a victim who has suffered due to that same person's unlawful conduct and an *indemnity* . . . ." (*Lemat Corp.* v. *American Basketball Assn.* (1975) 51 Cal.App.3d 267, 278 [124 Cal.Rptr. 388], italics added.)

An "[i]ndemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (§ 2772.) ▓ In an indemnity agreement, "the promisee seeks to enforce the promisor's agreement to indemnify him if and when a third party asserts a claim against the promisee." (*County of San Joaquin* v. *Stockton Swim Club* (1974) 42 Cal.App.3d 968, 973 [117 Cal.Rptr. 300].)

▓ "If section 1668 applied to agreements to indemnify persons against unlawful acts then *all* agreements to indemnify against violations of the law would be illegal. The distinctions made in section 2773 and section 2774 between unlawful acts 'thereafter to be done' and an unlawful act already done would be given no effect. Statutes are to be construed as a whole and, when reasonably possible, full force and effect given to all of their provisions. [Citation.] [¶] . . . A public policy consideration exists. An exemption may deprive a victim of compensation for injuries but an agreement to indemnify a person who may be responsible for a loss is additional assurance that the loss will be compensated. . . . Section 1668 is not applicable to indemnity agreements." (*Lemat Corp.* v. *American Basketball Assn., supra*, 51 Cal.App.3d at pp. 277-278, fn. omitted.)

Section 2773 "voids indemnification of future acts known to be unlawful by the actor. . . . [It] involves a potential for *increased* damage to society from future unlawful acts. . . . [W]hen any part of an indemnity agreement involves a future act, section 2773 applies." (*Lemat Corp.* v. *American Basketball Assn., supra*, 51 Cal.App.3d at pp. 278-279.)

We shall assume for this discussion that transmission of genital herpes would constitute a misdemeanor under Health and Safety Code section 3198. (See *Kathleen K.* v. *Robert B., supra*, 150 Cal.App.3d at pp. 996-997, fn. 3.) ▓ The question is whether, at the time Eddy engaged in sexual intercourse with Greenstreet, he *knew* the act was unlawful.

Civil Code section 2773, by its language, requires actual knowledge. Even if, in retrospect, Eddy perhaps should reasonably have known that he was

exposing a person to or infecting her with a venereal disease (because of his medical and dating history), the indemnity agreement would not be void. (Cf. § 2773 [be known] with Pen. Code, § 311.4 [has knowledge or has possession of such facts that he *should reasonably know*].) (*Lemat Corp.* v. *American Basketball Assn., supra,* 51 Cal.App.3d at p. 279.)

A reading of the declarations accompanying the motion for summary judgment shows that Eddy asserted that he had a good faith belief that he did not have herpes, and that this was founded on the results of the viral culture taken in 1985. Summary judgment may be denied "where a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof." (Code Civ. Proc., § 437c, subd. (e).) ▇▇▇ "[I]f an issue of fact is present the trial court abuses its discretion in granting such a motion [citations]." (*Black* v. *Sullivan* (1975) 48 Cal.App.3d 557, 567 [122 Cal.Rptr. 119].)

▇▇▇ If Eddy's asserted belief is found true, even though he committed an unlawful act, the agreement to indemnify would not be void under section 2773. If, on the other hand, it is found that at the time Eddy engaged in intercourse he knew he was committing an unlawful act, the indemnity agreement is void.

▇▇▇ We have noted that State Farm has a duty to defend Eddy in the suit brought by Greenstreet. "Since . . . the court in the third party suit does not adjudicate the issue of coverage, . . . [t]he only question there litigated is the insured's *liability.* . . . [¶] . . . [I]f the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment. If the injured party prevails, that party or the insured will assert his claim against the insurer. At this time the insurer can raise the noncoverage defense previously reserved." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 279, fn. omitted.)

State Farm has reserved its right to assert its noncoverage defense. If it is found that Eddy knew at the time he had intercourse with Greenstreet that he was acting unlawfully, State Farm may at that time assert that the contract is void under section 2773.

### 2. Intent to Harm

▇▇▇ Appellants next argue that the trial court erred in finding no coverage under the policy because the harm was intentional. They argue that neither Insurance Code section 533 nor the intentional acts exclusion

of the policy should defeat coverage where a consensual act of intercourse resulted in unintended harm.[5]

Section 533 provides that an insurer is not liable for a loss caused by the willful act of the insured; but that it is not exonerated by the negligence of the insured. ■■ Under California law, section 533 is a part of every insurance contract and is the equivalent to an exclusionary clause in the insurance contract itself. (*Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 540 [122 Cal.Rptr. 680].) In addition, Eddy's policy contained an intentional acts exclusion which provided that liability coverage did not apply to "bodily injury or property damage which is expected or intended by an insured."

■■ "[A]n act which is 'intentional' or 'willful' within the meaning of traditional tort principles will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.' [Citations.]" (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098].) "[S]ection 533's concept of a 'wilful act' does not extend to an act 'performed without *intent to harm* . . . [but which] nevertheless result[s] in injury and possible exposure to punitive damages because it was done with conscious disregard for the rights or safety of others.'" (*Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 849 [206 Cal.Rptr. 823] quoting *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 159 [181 Cal.Rptr. 784, 642 P.2d 1305].)

"These expressions by our high court establish that the species of 'willfulness' contemplated by section 533 not only transcends recklessness but is something in the nature of specific intent to injure." (*Allstate Ins. Co.* v. *Overton, supra,* 160 Cal.App.3d at p. 849.) "Insurance Code section 533 clearly excludes coverage for those 'wilful' acts committed with the specific intent to injure, but not those nonmalicious acts committed with the sole intent to do the act which caused the harm." (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 33 [221 Cal.Rptr. 171].)

■■ ■■ State Farm's position is that an intent to injure may be inferred because the act constitutes sexual misconduct. This view of the law is based on cases involving sexual misconduct with minors (*State Farm Fire & Casualty Co.* v. *Robin R.* (1989) 216 Cal.App.3d 132 [264 Cal.Rptr. 326] review granted Feb. 15, 1990 (S013639)) or forcible sex acts between adults (see this court's collection of authority in *Fire Insurance Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012 [251 Cal.Rptr. 620]).

---

[5] Hereafter, all statutory references are to the Insurance Code unless otherwise stated.

The instant case does not involve convicted child molesters, where, "[i]n attempting to protect children by enacting Penal Code section 288, the Legislature has implicitly determined 'that at least some harm is inherent in and inevitably results from those acts.' [Citation.]" (*Fire Insurance Exchange* v. *Abbott, supra,* 204 Cal.App.3d at p. 1023.)

Nor does this case involve forcible sexual assault. The injury here arose from an act of voluntary intercourse between unmarried adults. Such conduct is not proscribed by law. (See Pen. Code, tit. 9, Of Crimes Against the Person Involving Sexual Assault, etc., §§ 261-292.)

We note that Greenstreet alleged battery. However, she did not allege facts amounting to a forcible sexual assault. Facts supporting a battery theory are not necessarily the type of willful act precluded from coverage by section 533. (*Allstate Insurance Co.* v. *Overton, supra,* 160 Cal.App.3d at p. 850.)

Moreover, although Greenstreet also alleged fraud, charging that her consent was induced by Eddy's silence, which amounted to a deliberate misrepresentation that he was free of any sexually transmittable disease, this does not vitiate her consent so as to transform the act into a sexual assault.

For purposes of prosecutions under some sections of Penal Code, title 9, " 'consent' shall be defined to mean positive cooperation in act or attitude pursuant to an exercise of free will. The person must act freely and voluntarily and have knowledge of the nature of the act or transaction involved." (Pen. Code, § 261.6.) Although " 'if deception causes a misunderstanding as to the fact itself (fraud in the *factum*) there is no legally-recognized consent because what happened is not that for which consent was given; . . . consent induced by fraud is as effective as any other consent, so far as direct and immediate legal consequences are concerned, if the deception relates not to the thing done but merely to some collateral matter (fraud in the inducement.)' [Citation.]" (*Boro* v. *Superior Court* (1985) 163 Cal.App.3d 1224, 1228 [210 Cal.Rptr. 122].) In short, fraud in the inducement does not vitiate consent so as to cause the sexual contact to amount to rape. (Pen. Code, § 261; *Boro* v. *Superior Court, supra,* 163 Cal.App.3d at p. 1229.)

Therefore, since the conduct alleged does not constitute any form of sexual assault proscribed by title 9 of the Penal Code, there was no implicit determination by the Legislature that some harm is "inherent in and inevitably results from those acts." Therefore, intent to harm may not be inferred as a matter of law.

 Finally, in this case Eddy contends that he did not know he had herpes, therefore he did not expect or intend to transmit herpes to Green-

street. Two out-of-state jurisdictions which have considered this issue have agreed with Eddy's position. In *State Farm Fire and Cas. Co.* v. *Irene S.* (1988) 138 A.D.2d 589 [526 N.Y.S.2d 171, 173], the New York court held that under a homeowner's policy with language similar to that here, if the defendant proved that the damages sustained by the plaintiff were unintended, the injuries would be covered by the policy. The court also "recognized that 'it is not legally impossible to find accidental results flowing from intentional causes, i.e., that the resulting damage was unintended although the original act or acts leading to the damages were intentional.' [Citations.]" (*Ibid.*)

A Minnesota court agreed with this reasoning in *North Star Mut. Ins. Co.* v. *R. W.* (Minn.Ct.App. 1988) 431 N.W.2d 138, 141, which stated: "Here, T.F. contends that he did not know that he had herpes on the date that the couple had sexual intercourse. The claim is based in negligence principles. Accordingly, we hold that this is a material issue of fact for a jury to decide. Until this fact question is answered, we hold that the claim is arguably within the scope of coverage, and therefore North Star must defend T.F. in the underlying action."

Respondent rebuts *North Star* with *Merced Mutual Ins. Co.* v. *Mendez* (1989) 213 Cal.App.3d 41 [261 Cal.Rptr. 273], a case involving causes of action for negligent and intentional assault and battery, and negligent and intentional infliction of emotional distress. The complainant alleged that Mendez had performed acts of oral copulation and attempted oral copulation against her will several times at their mutual place of employment.

The court held that Mendez's conduct was neither accidental nor unintended. "An accident . . . is never present when the insured performs a deliberate act unless some additional, unexpected, independent, and unforeseen happening occurs that produces the damage. . . . [¶] . . . "[The] sexual activity, which [the complainant] alleges occurred against her will, forms the basis of her action against Mendez. All of the acts, the manner in which they were done, and the objective accomplished occurred exactly as appellant intended. No additional, unexpected, independent or unforeseen act occurred. 'Whatever the motivation,' because Mendez's conduct was 'calculated and deliberate' [citation], it was not an 'accident' and thus not an 'occurrence' within the meaning of the policy provision." (*Merced Mutual Ins. Co.* v. *Mendez, supra,* 213 Cal.App.3d at p. 50.)

In the instant case, the record could support an ultimate finding that there was an unexpected, independent, and unforeseen happening that produced the injury, namely, Eddy's infection with the disease. In the past, he had sought medical care and was told that he had tested negative for herpes.

In such a case, although he performed an intentional act in having intercourse with Greenstreet, the causal factor for the injury, his infection with the herpes virus and its transmission to Greenstreet, was unexpected, unforeseen, and independent of the intentional conduct.

Coverage is not always precluded merely because the insured acted intentionally and the victim was injured. Appellants raise a triable issue of fact as to Eddy's subjective intent.

### 3. Covered Peril

Next, appellants contend that there was no language in Eddy's homeowner's policy which would notify him that State Farm did not intend to insure for the peril in question, and that therefore, coverage should be provided.

■ The law is clear that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. If the insurer uses language which is uncertain, any reasonable doubt will be resolved against it. If the doubt relates to the extent or fact of coverage, such as whether or not the peril is insured against, the language will be understood in its most inclusive sense, for the benefit of the insured. (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914].)

■ State Farm argues that public policy should preclude indemnity for the results of voluntary sexual conduct because "individuals [should] shoulder the responsibility for such acts."

Public policy recognizes the necessity to help prevent the spread of dangerous disease. (Health & Saf. Code, § 3000 et seq.; *Barbara A.* v. *John G.* (1983) 145 Cal.App.3d 369, 380 [193 Cal.Rptr. 422].) If State Farm wishes to exclude from coverage the results of voluntary sexual conduct, it may do so. An insurance company can adjust and rewrite its policies to create more specific terms and exclusions. State Farm could specifically exclude coverage to policy holders for the transmission of sexual diseases.

Appellants make the additional claim that the court should have allowed them to present evidence of State Farm's modification of its homeowner's policy to exclude sexually transmissible diseases by changing the policy's definition of bodily injury.

■ "We agree that evidence of subsequent revisions of an exclusionary clause in an insurance policy should be inadmissible because it lacks *relevance,* i.e., has no tendency to prove a material fact—is not probative on the

issue of liability. [¶] There are sound reasons for approving this approach. Public policy favors remedial action as furthering the public good; it is not to be discouraged, by in effect penalizing those taking remedial action with an unwarranted inference of liability. In addition, remedial action cannot logically be equated with liability, for there could be a number of reasons for pursuing it, to preclude litigation such as this, for example. Evidence Code section 1151 also could be construed as requiring exclusion on the ground that potential prejudice outweighed slight probative value, if evidence of subsequent revisions of policy was offered." (*McKee* v. *State Farm Fire & Cas. Co.* (1983) 145 Cal.App.3d 772, 777-778 [193 Cal.Rptr. 745].)

## DISPOSITION

The judgment is reversed.

Agliano, P. J., and Elia, J., concurred.

A petition for a rehearing was denied April 5, 1990, and respondent's petition for review by the Supreme Court was denied June 7, 1990.