**SAGE COMPANY, Appellant,**

v.

**The INSURANCE COMPANY OF NORTH AMERICA, et al., Respondents,**

**Audrey Lecy, Respondent.**

**No. CX–91–1443.**

Court of Appeals of Minnesota.

Feb. 18, 1992.

Lewis A. Remele, Jr., Bonita J. Girard, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Sage Co.

Andrea M. Nelson, Burton D. Anderson & Associates, Bloomington, for The Insurance Co. of North America, et al.,

Douglas A. Hedin, Minneapolis, for Audrey Lecy.

Considered and decided by AMUNDSON, P.J., and FORSBERG and KALITOWSKI, JJ.

## OPINION

AMUNDSON, Judge.

In March 1989 Audrey Lecy sued her former employer, appellant Sage Company, for wrongful employment termination. Sage tendered defense of Lecy's claim to its insurers, respondents The Insurance Company of North America and Pacific Employers Insurance Company. They denied coverage on the grounds there was no occurrence, no bodily injury and no personal injury. In August 1990 Sage commenced this declaratory action against respondents and moved for summary judgment. The trial court denied Sage's motion, granted summary judgment to respondents and dismissed Sage's complaint. This appeal followed.

## FACTS

In 1987 Audrey Lecy was employed by appellant Sage Company, a Minnesota general partnership, to manage one of its apartment buildings. In November 1987 Sage terminated Lecy, claiming she was not satisfactorily performing her duties as a resident manager. John Goodman, Sage's managing partner, and Dotti Shay, the property manager, made the decision to terminate Lecy. Lecy was sixty-three years old. Sage told Lecy she was being "retired" and distributed a notice to residents of the apartment building announcing Lecy's "retirement."

In March 1989 Lecy sued Sage for age discrimination, Minn.Stat. § 363.03 (1988), and failure to properly respond to Lecy's request for the reasons for her termination. Minn.Stat. § 181.933 (1988). Lecy alleged mental anguish and suffering, but denied she suffered any accompanying or resulting bodily injury. Sage tendered defense of Lecy's claim to its insurers, respondents The Insurance Company of North America (INA) and Pacific Employers Insurance Company (Pacific). Both insurance companies rejected tender of the case on the grounds there was no "occurrence," "bodily injury," or "personal injury" as defined in the insurance policies.

In August 1990 Sage commenced this declaratory judgment, arguing INA and Pacific owed it a duty to defend and indemnify against Lecy's discrimination claim. Sage subsequently moved for summary judgment. The trial court denied Sage's summary judgment motion, but granted respondents summary judgment and dismissed Sage's claim. The trial court concluded Lecy's employment termination was not an "occurrence" within the meaning of the two policies. The court did not reach the issue of whether the alleged damages amounted to "bodily injury" or "personal injury" as defined in the insurance policies. Judgment was entered and this appeal followed.

## ISSUES

1. Is involuntary termination of employment an "occurrence" as defined by respondents' insurance liability policies?

2. Are the alleged innocent partners entitled to coverage under respondents' insurance liability policies?

## ANALYSIS

On review of summary judgment decisions, this court must determine whether there are genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The interpretation and construction of an insurance policy is a matter of law which this court may review de novo without deference to the trial court's determination. *Seaway Port Auth. v. Midland Ins. Co.,* 430 N.W.2d 242, 247 (Minn.App.1988). When interpreting an insurance policy, the policy must be given its ordinary and usual meaning so as to effect the intent of the parties as it appears from the insurance contract. *Canadian Universal Ins. Co. v. Fire Watch, Inc.,* 258 N.W.2d 570, 572 (Minn.1977).

The duty to defend is contractual in nature and is generally determined by the allegations of the complaint against the insured and the indemnity coverage offered by the policy. *Republic Vanguard Ins. Co. v. Buehl,* 295 Minn. 327, 332, 204 N.W.2d 426, 429 (1973). An insurer contesting coverage has the burden of proving the nonexistence of coverage. *Prahm v. Rupp Constr. Co.,* 277 N.W.2d 389, 390 (Minn.1979).

We conclude respondents have met their burden of proving the nonexistence of coverage as a matter of law. Specifically, we agree with the trial court that Sage's termination of Lecy was not an "occurrence" within the meaning of the term in INA and Pacific's insurance policies. Both policies expressly state the insured will be indemnified for a claim against it based on bodily or personal injury resulting from an occurrence. The Pacific policy defines occurrence as follows:

> Occurrence means an *accident,* including continuous or repeated exposure to the same event, that results, during the poli-

cy period, in loss or damage to your property, or in *bodily injury, personal injury,* or *property damage.* Such injury or damage must be neither expected nor intended by the *insured.*

(Emphasis in original.)

The INA policy defines occurrence as:

an accident, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of the Insured.

At the outset, we note the obvious: an "occurrence," for purposes of this case, requires three conditions: (1) an accident, (2) resulting in bodily injury or personal injury, and (3) neither expected nor intended by Sage. If any of the conditions are not met, there is no occurrence, according to the policies' definitions, and therefore Pacific and INA owe Sage neither a duty to defend nor indemnify against Lecy's discrimination claim.

We conclude that Sage's firing of Lecy was not an accident. The Pacific policy defines accident as "a sudden, unforeseen, unintended event." INA's policy does not define accident; however case law in this state has defined accident as "an unexpected, unforeseen, or undesigned happening." *Hauenstein v. St. Paul Mercury Indem. Co.,* 242 Minn. 354, 358–59, 65 N.W.2d 122, 126 (1954).

In this case, Dotti Shay met with Lecy several times to evaluate and suggest ways of improving Lecy's job performance, and only after Lecy failed to improve her performance, did Shay and Goodman decide to terminate Lecy's employment. Lecy's intentional discharge, under these circumstances, was the antithesis of an accident. It was expected, intended, and designed. Accordingly, the trial court correctly held that the termination of Lecy was not an occurrence as a matter of law. *See St. Paul Fire & Marine Ins. Co. v. Superior Court,* 161 Cal.App.3d 1199, 1202–03, 208 Cal.Rptr. 5, 7 (1984) (intentional discharge of employee cannot be an unintended or unexpected occurrence as a matter of law); *see also Hartford Fire Ins. Co. v. Karavan Enters.,* 659 F.Supp. 1077, 1081 (N.D.Cal.1987); *Commercial Union Ins. Co. v. Superior Court,* 196 Cal.App.3d 1205, 1207–08, 242 Cal.Rptr. 454, 454–55 (1987), *pet. for rev. denied.* (Cal. Feb. 24, 1988). Consequently, Pacific and INA have neither the duty to indemnify nor defend Sage against Lecy's discrimination claim.

Because we conclude Sage's intentional discharge of Lecy was not an accident within the meaning of the policy, we do not reach the issue whether Lecy's alleged damages constitute "bodily injury" or "personal injury."

## II.

Sage advances a second argument. It argues that because Lecy was fired by only one partner, her termination was an accident with respect to Sage's other partners. Hence Lecy's termination, according to Sage, should be treated as an occurrence as to Goodman's copartners, and Pacific and INA owe a duty to defend and indemnify the copartners against Lecy's claim. We find this argument untenable.

All partners are agents of the partnership. Minn.Stat. § 323.08 (1990). A partnership is therefore liable for the wrongful act of any partner "acting in the ordinary course" of the partnership's business or "with the authority of the copartners." Minn.Stat. § 323.12 (1990). In this case there is no record evidence whatsoever that Shay or Goodman were acting outside the scope of Sage's ordinary course of business. Hence, contrary to Sage's contention, there is no fact issue about whether Shay or Goodman were acting within the course of Sage's business. As a result, Goodman's decision to terminate Lecy must be imputed to his copartners. Accordingly, we hold none of Sage's partners are entitled to indemnity or defense from the insurance companies in Lecy's wrongful termination case against the partnership.

Sage argues *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.,* 401 N.W.2d 381 (Minn.1987) militates a reversal. We disagree. In *Hogs Unlimited,* the supreme court addressed the issue whether innocent

copartners can recover from the partnership's casualty policy for the intentional destruction of insured hogs. The supreme court held the casualty policy provision voiding the policy for fraud of "the insured" did not void coverage for the innocent partners. *Id.* at 386. Similarly, Sage argues, the intentional termination of Lecy by Goodman should not preclude coverage for the other partners. *Hogs Unlimited* is distinguishable from this case however. Unlike in this case, the wrongdoing partner in *Hogs Unlimited* plainly acted outside both the scope of his authority and the ordinary course of the partnership's business. *See id.* (innocent insureds can recover insurance provided the conduct is not within the wrongdoer's authority). Because we conclude Goodman and Shay were acting in the ordinary course of Sage's business, Sage's argument necessarily fails.

## DECISION

The trial court properly granted respondents' summary judgment on the question of whether respondents owed a duty to defend or indemnify Sage against Lecy's wrongful termination action.

Affirmed.