510 N.W.2d 231 (1994)
R.W., Judgment Creditor, Respondent,
v.
T.F., Judgment Debtor,
North Star Mutual Insurance Company, Garnishee, Appellant.
No. C7-93-819.
Court of Appeals of Minnesota.
January 4, 1994.
Review Granted March 22, 1994.
*233 R.D. Blanchard and Richard L. Pemberton, Jr., Meagher & Geer, Minneapolis, for appellant.
Stewart Perry and Shawn M. Perry, Perry, Perry & Perry, Wayzata, for respondent.
Considered and decided by PARKER, P.J., and KALITOWSKI and FOLEY[*], JJ.

OPINION
FOLEY, Judge.
This appeal is from a judgment entered following a jury trial in a garnishment action. The garnishment action was based on a judgment entered pursuant to a Miller/Shugart agreement. We affirm.

FACTS
T.F. was insured under a homeowner's policy issued by North Star Mutual Insurance Company (North Star) effective July 9, 1983 through July 9, 1984. On March 17, 1984, T.F. had unprotected sexual intercourse with a woman at a hotel in St. Paul. A day or two later, T.F. noticed sores in his genital area. On May 4, 1984 and May 18, 1984, R.W. and T.F., both adults, engaged in unprotected consensual sexual intercourse at T.F.'s home. On May 23, 1984, R.W. noticed genital sores, and on May 27, 1984, she was diagnosed with genital herpes.
R.W. filed a complaint, alleging that T.F.'s failure to inform her that he had herpes rendered her consent to the sexual act null and void, and that T.F. negligently transmitted genital herpes. T.F. tendered the defense to North Star, which declined coverage and commenced a declaratory judgment action. The district court granted summary judgment in favor of North Star.
T.F. appealed. R.W. did not appeal. In North Star Mutual Ins. Co. v. R.W., T.F., 431 N.W.2d 138 (Minn.App.1988), pet. for rev. denied (Minn. Jan. 13, 1989) (North Star I), this court held that North Star's duty to defend T.F. was arguably within the scope of coverage afforded by North Star's policy. This court also held that there was a genuine issue of material fact whether T.F. knew he had herpes on the date that he had sexual intercourse with R.W. Thus, this court deferred a determination of the duty to indemnify until a trial on the merits in the underlying action.
In September 1988, after the case had been argued before this court but before this court issued an opinion, R.W. and T.F. entered into a Miller/Shugart agreement. T.F. agreed to an entry of judgment against him in the amount of $50,000, but with the provision that R.W. would only collect from the proceeds of the homeowner's policy. Judgment was entered in accordance with the Miller/Shugart agreement. After T.F. noticed a motion for summary judgment and North Star moved for an order dismissing the action without prejudice, the district court issued an order dismissing the action without prejudice and determining that R.W. should determine her rights against North Star in a garnishment proceeding. T.F.'s *234 motion for summary judgment was dismissed as moot.
Despite North Star's opposition, the district court allowed R.W. to file a supplemental complaint. North Star moved for summary judgment, arguing the doctrine of res judicata barred R.W.'s action. The district court denied North Star's motion. The parties entered into a stipulation of certain facts before trial. At the close of the evidence, North Star moved for a directed verdict. The district court denied the motion.
The jury returned a special verdict form answering the questions that were prepared by North Star's counsel as follows:
1. Did T.F. know or have reason to know that he was infected with genital herpes or another serious venereal disease before he engaged in sexual contacts with R.W.? Yes.
2. If your answer to Question No. 1 was "yes", then answer this question: Did T.F. know or have reason to know that before he engaged in sexual contacts with R.W. that he could transmit genital herpes or another serious venereal disease to R.W. by engaging in sexual intercourse with R.W.? Yes.
3. Did R.W. contract genital herpes from T.F. as a result of an accident? Yes.
4. Did T.F. expect or intend to infect R.W. with the genital herpes or another serious venereal disease? No.
5. Did T.F. fraudulently conceal from plaintiff that he was infected with genital herpes? No.
North Star moved for JNOV, amended conclusions of law, and a new trial. The district court denied these motions and entered judgment against North Star. This appeal followed, and this court denied North Star's request for en banc consideration of this case.

ISSUES
I. Is R.W.'s claim barred by the doctrine of res judicata?
II. Did R.W. contract genital herpes from T.F. as a result of an accident within the meaning of the homeowner's insurance policy?
III. Does R.W.'s tort claim against T.F. invoke the policy's intentional injury exclusion as a matter of law?
IV. Is allowing insurance coverage under a homeowner's insurance policy for liability for transmission of herpes contrary to public policy?

ANALYSIS
We note initially that in its JNOV motion, North Star did not challenge the special verdict questions submitted to the jury. Nor could it, since the district court used the questions North Star's counsel submitted.
R.W. argues that North Star's arguments are barred by the doctrine of law of the case. The holding of North Star I was that, viewing the evidence in a light most favorable to T.F., North Star had a duty to defend T.F. since R.W.'s claim was arguably within the scope of coverage. North Star I, 431 N.W.2d at 143. Since we are not deciding a summary judgment or duty to defend issue in this case, we will consider North Star's arguments. See Am.Jur.2d, Appeal and Error § 753 (1962) (doctrine only applies to so much of the former decision as was essential to the determination made by the appellate court).

I. Res Judicata

North Star argues that since R.W. did not appeal from the entry of summary judgment in the original declaratory judgment action, the judgment against her became final. North Star asserts that the doctrine of res judicata prevents R.W. from relitigating her claim under the North Star insurance policy.
A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action. Hauser v. Mealey, 263 N.W.2d 803, 807 (Minn.1978). It is conclusive between parties and privies as to every matter that was actually litigated as well as to every matter that might have been litigated therein. Id. A judgment in a declaratory judgment action has full res judicata effect. Howe v. Nelson, 271 Minn. 296, 301-02, 135 N.W.2d 687, 691-92 (1965). Courts, however, *235 should not apply the doctrine of res judicata rigidly. AFSCME Council 96 v. Arrowhead Regional Corrections Bd., 356 N.W.2d 295, 299 (Minn.1984). As a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged. Johnson v. Consolidated Freightways, Inc., 420 N.W.2d 608, 613-14 (Minn.1988).
If North Star's arguments were correct, then the first appeal in this case would have been moot. If R.W. could not make a claim under the policy, then it would be meaningless to determine that North Star had a duty to defend. With no claim by R.W., there would be nothing against which to defend.
North Star argues that res judicata was not triggered until the parties entered into the Miller/Shugart agreement. North Star's argument, however, is based on the fact that R.W. did not appeal from the entry of summary judgment. Thus, under this argument, R.W.'s cause of action would be barred by the doctrine of res judicata as soon as her time to appeal the entry of summary judgment ran out. Subsequently entering into a Miller/Shugart agreement would not change anything.
The cases cited by North Star are not controlling in this case. Unlike in Nelson v. Engen, 347 N.W.2d 57 (Minn.App.1984), T.F. did appeal the original determination and obtain a reversal. In Nelson, the original determination was never appealed. Id. at 61. Further, in seeking to require North Star to defend, R.W.'s and T.F.'s interests were not adverse as were the interests of the parties in In re Guardianship of Hudson's Estate, 235 Minn. 444, 51 N.W.2d 103 (1952).
This case also is factually distinguishable from Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In Moitie, the Supreme Court decided that certain plaintiffs in a consolidated antitrust action, who made a calculated choice to forgo their appeals, were not entitled to the benefit of the successful appeal of other plaintiffs. All of the plaintiffs' claims had been dismissed because they had not alleged an "injury" to their "business or property" within the meaning of the Clayton Act. While the appeal was pending, a federal court of appeals held that a retail purchaser can suffer an injury to their business or property within the meaning of the Clayton Act. Thus, the Court of Appeals remanded in the cases of the plaintiffs that appealed. In Moitie, deciding that certain plaintiffs did allege an injury did not necessarily imply that other plaintiffs also alleged an injury. In this case, however, deciding that there is a duty to defend under the policy necessarily implies that there is someone to defend against  otherwise the court is just deciding a hypothetical question. See Miller v. Market Men's Mut. Ins. Co., 262 Minn. 509, 513, 115 N.W.2d 266, 269 (1962) (order deciding contract liability between insurer and insured not res judicata as to tort plaintiff).
Thus, we conclude that R.W.'s claim is not barred by the doctrine of res judicata.

II. "Accident"
North Star argues that R.W.'s injury was not caused by an "accident." The supreme court has defined "accident" as "a source and cause of damage to property" as
an unexpected, unforeseen, or undesigned happening or consequence from either a known or unknown cause.
Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 358, 65 N.W.2d 122, 126 (1954). The Minnesota Supreme Court has observed that the application of the Hauenstein definition to particular facts "has produced a quagmire of conflicting results and rationales." Bituminous Cas. Corp. v. Bartlett, 307 Minn. 72, 77 n. 5, 240 N.W.2d 310, 313 n. 5 (1976), overruled on other grounds, by, Prahm v. Rupp Constr. Co., 277 N.W.2d 389, 391 (Minn.1979).
This court has applied the Hauenstein definition in the context of a party seeking coverage under a homeowner's insurance policy for the negligent transmission of genital herpes. See Milbank Ins. Co. v. B.L.G., 484 N.W.2d 52, 58 (Minn.App.1992), pet. for rev. denied (Minn. July 16, 1992). In Milbank, this court held that, at least in the context of facts such as these, the Hauenstein definition of "accident" does not exclude all "foreseeable" injury. Id. The court adopted the view that the term "accident" includes "all negligently caused injury, provided such injury *236 was not intentional." Id. (citing Bartlett, 307 Minn. at 77 n. 5, 240 N.W.2d at 313 n. 5).
Here, the jury found, using special verdict questions prepared by North Star's counsel, that "R.W. contract[ed] genital herpes from T.F. as a result of an accident." In instructing the jury on this special verdict question, the trial court used language from Hauenstein: "Occurrence means an accident. An accident is an unexpected, unforeseen happening."
Despite the jury's answers in the special verdict that "R.W. contract[ed] genital herpes from T.F. as a result of an accident," North Star urges this court to hold that R.W. did not contract genital herpes as a result of an accident. In this case, there is a negligently caused injury, R.W.'s contraction of genital herpes. This injury was not intentional  the jury found that T.F. did not "expect or intend to infect R.W. with the genital herpes or another serious venereal disease." Thus, the injury in this case comes within the definition of accident in Milbank. Therefore, we hold that R.W.'s injury was caused by an "accident."

III. Intentional Injury Exclusion

North Star argues that R.W.'s claim invokes the intentional injury exclusion as a matter of law. North Star stated, incorrectly, that R.W. has asserted negligence, fraud and battery claims against T.F. R.W. has only asserted negligence claims. See North Star I, 431 N.W.2d at 139 ("The complaint specifically alleges that the actions of T.F. were negligent and not intentional.") (emphasis in original). North Star argues that R.W.'s claim is based on nonconsensual sexual contact, and that nonconsensual contact is excluded as a matter of law by the intentional injury exclusion.
The Minnesota Supreme Court has held that coverage is not avoided by an intentional act exclusion
unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application.
Caspersen v. Webber, 298 Minn. 93, 98, 213 N.W.2d 327, 330 (1973). Intent will not be presumed. Continental W. Ins. Co. v. Toal, 309 Minn. 169, 174, 244 N.W.2d 121, 125 (1976). We reiterate that in this case, the jury, using special verdict questions drafted by North Star's counsel, found that, although T.F. knew or had reason to know he was infected with genital herpes when he had sexual intercourse with R.W., he did not expect or intend to infect R.W. with genital herpes.
North Star is asking this court to infer intent where the jury found none. Intent may be established if the "character of an act is such that an intention to inflict injury can be inferred as a matter of law." Woida v. North Star Mut. Ins. Co., 306 N.W.2d 570, 573 (Minn.1981). Minnesota courts have inferred such an intent in instances of sexual misconduct with minors or forcible sex acts between adults. See Estate of Lehmann v. Metzger, 355 N.W.2d 425 (Minn.1984) (infer intent when uncle repeatedly sexually assaults niece); State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421 (Minn.1984) (infer intent when professor has nonconsensual sexual contact with disabled adult); Fireman's Fund Ins. Co. v. Hill, 314 N.W.2d 834 (Minn.1982) (infer intent when adult sexually abuses foster child in his care).
In this case, however, both R.W. and T.F. are adults. Their sexual contacts were consensual, not forcible. Although North Star does cite a few different cases in this appeal, its argument is basically the same as the one this court rejected in North Star I, that we should apply the line of cases dealing with sexual assaults and sexual intercourse with minors to this case. See North Star I, 431 N.W.2d at 143 ("North Star is asking us to infer intent as a matter of law in a negligence case involving consenting adults."). We decline to do so. As we noted in North Star I, "[n]one of these cases supports North Star's argument that we should infer intent to injure upon the facts here." Id. at 141. Our conclusion is consistent with other courts that have considered the issue. See State Farm Fire & Cas. Co. v. S.S. & G.W., 858 S.W.2d 374 (Tex. 1993) (refusing to infer intent as a matter of law in an action claiming damages for the transmission of genital herpes), rehearing overruled (Tex. Sept. 10, *237 1993); State Farm Fire & Cas. Co. v. Eddy, 218 Cal.App.3d 958, 267 Cal.Rptr. 379 (1990), rev. denied (Cal. June 7, 1990) (even though plaintiff alleged battery and fraud, since the conduct alleged does not constitute any form of sexual assault proscribed by Title 9 of the Penal Code, there was no implicit determination by the Legislature that some harm is "inherent in and inevitably results from those acts" intent may not be inferred as a matter of law).
We also note that North Star did not raise this "informed consent" argument at trial. That issue will not be considered when it was raised for the first time on appeal.

IV. Public Policy

North Star argues that allowing coverage for T.F.'s conduct would be contrary to Minnesota's public policy.
This court has rejected this argument twice. See Milbank, 484 N.W.2d at 58 (insurance coverage for liability for transmission of herpes is not contrary to public policy); North Star I, 431 N.W.2d at 143 (North Star's duty to defend T. F. pursuant to the terms of his homeowner's policy is not contrary to public policy). Foreign courts have rejected this argument as well. See Eddy, 218 Cal.App.3d at 972, 267 Cal.Rptr. 379; Loveridge v. Chartier, 161 Wis.2d 150, 468 N.W.2d 146, 157-58 (1991). Thus, we conclude that allowing coverage would not be contrary to public policy.

DECISION
The decision of the trial court is affirmed. R.W.'s claim is not barred by the doctrine of res judicata. R.W.'s injury comes within the definition of "accident." T.F.'s conduct does not invoke the policy's intentional injury exclusion as a matter of law. Allowing coverage would not be contrary to public policy.
Affirmed.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.