**Frank GILMAN, et al., Creditors, Appellants (C1–94–888), Respondents (C5–94–943),**

**and**

**Brian Lawson, Debtor,**

v.

**STATE FARM FIRE & CASUALTY CO., Garnishee, Respondent (C1–94–888), Appellant (C5–94–943).**

Nos. C1–94–888, C5–94–943.

Court of Appeals of Minnesota.

Jan. 17, 1995.

John M. Riedy, McLean Peterson Law Firm, Mankato, for Frank Gilman, et al., appellants (C1–94–888), respondents (C5–94–943).

Kenneth R. White and Gerald L. Maschka, Farrish, Johnson & Maschka, Mankato, for State Farm Fire & Cas. Co., respondent (C1–94–888), appellant (C5–94–943).

Considered and decided by KALITOWSKI, P.J., and HARTEN and FOLEY*, JJ.

## OPINION

HARTEN, Judge.

Appellants Frank and Dawn Gilman (the Gilmans) challenge the trial court's denial of their motion for judgment notwithstanding the verdict, claiming that the jury's finding that Brian Larson did not intend to injure Frank Gilman when he tackled him entitles

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

them to coverage under Larson's homeowner's insurance policy. Alternatively, the Gilmans argue that they are entitled to a new trial because the trial court erred in instructing the jury on the definition of "accident" and in framing special interrogatories. Respondent State Farm Fire & Casualty (State Farm) claims that, notwithstanding the verdict, the trial court should have found an intent to injure as a matter of law. We affirm.

## FACTS

On August 25, 1990, the Gilmans moved into a new home near the city of Lake Crystal. Approximately 20 people helped with the move, including Frank Gilman's friend and distant cousin, Jeff Gilman, and his wife, Gail Gilman. After the move, the Gilmans had a house-warming party with the people who helped them move.

At approximately 5:00 p.m. that afternoon, Frank Gilman and Gail Gilman went into Lake Crystal to buy some supplies for the party. While they were in town, they went to the municipal liquor store and had a few beers. While at the liquor store they met Brian Larson, an acquaintance of Frank Gilman and a friend of Gail and Jeff Gilman. Frank Gilman invited Larson to return to the party with them, and Larson accepted the invitation.

The three of them drove to the Gilman house together, arriving at approximately 7:30 p.m. Jeff Gilman, who was having marital problems, was upset and left the party when his wife Gail arrived. About two hours later, Gail Gilman took her children home. She told Larson that she would return. At home, she and her husband had an argument; she was assaulted, and sustained a cut lip and bleeding knee. She returned to the party upset and told the others what had happened.

Larson was going to leave the party to find Jeff Gilman; Frank Gilman tried to stop him. Larson pushed Gilman until he made his way out the door and into the yard. The two began struggling and fell to the ground. Frank Gilman pinned Larson to the ground and told him to calm down. When Larson said that he was calm, Gilman let him up.

As Gilman turned and took one step to walk away, Larson, renewing his aggressive conduct, tackled him from the side. They both fell to the ground with Larson on top of Gilman.

Gilman heard a loud crack and told Larson that his leg was broken. Larson did not believe that Gilman's leg was broken, and he remained on top of Gilman. Dawn Gilman pulled Larson off her husband, and Larson got up and left. Gilman was taken to the hospital and treated for a broken ankle.

The Gilmans sued Larson in district court. Larson submitted a claim to State Farm, with which he had a homeowner's insurance policy providing $100,000 coverage. State Farm denied coverage and refused to defend Larson. The parties entered into a *Miller–Shugart* settlement for $80,000, and Larson assigned to the Gilmans his rights under the State Farm homeowner's policy.

The Gilmans sued State Farm, and the case was tried to a jury on December 15, 1993. At trial, the Gilmans and Larson testified that Frank Gilman and Larson had a friendly relationship and that Larson was not trying to injure Gilman when he tackled him. The jury found, by separate interrogatories, that (1) the "incident" between Gilman and Larson was not an accident, but that (2) Larson did not intend to injure Gilman. The trial court entered judgment for State Farm. The Gilmans moved for a new trial or judgment notwithstanding the verdict. State Farm moved for a finding of intent to injure as a matter of law. The trial court denied both motions. The Gilmans appeal the trial court denial of judgment notwithstanding the verdict and denial of their motion for new trial and the judgment in the consolidated garnishment action. State Farm appeals the judgment in the main action and notices review on the Gilman appeal.

## ISSUES

1. Are the Gilmans entitled to judgment as a matter of law based on the jury's answers to special interrogatories or are the jury's answers irreconcilable?

2. Did the trial court err in denying the Gilmans' motion for a new trial?

3. Was respondent Larson's act of tackling Frank Gilman of such a nature that intent should be inferred as a matter of law?

## ANALYSIS

1. The Gilmans claim that the trial court erred in denying their motion for judgment notwithstanding the verdict.

In reviewing the facts in a case where a motion for judgment notwithstanding the verdict has been denied, we must affirm if there is any competent evidence reasonably tending to sustain the verdict. *Rettman v. City of Litchfield,* 354 N.W.2d 426, 429 (Minn.1984). The Gilmans claim that they are entitled to judgment as a matter of law based on the jury's answer to special interrogatory number 2, which found that Brian Larson did not intend to injure Frank Gilman. They also argue that the jury's answers to the two questions are inconsistent and irreconcilable. The trial court submitted two special interrogatories to the jury:

1. Was the incident in which Frank Gilman and Brian Larson were involved an accident?
2. Did Brian Larson intend to injure anyone?

The jury responded "No" to each of these questions.

■ State Farm argued at trial that its policy did not provide coverage because the injury to Frank Gilman did not arise out of an "occurrence." The relevant part of the State Farm homeowner's policy provides:

If a claim is made or a suit is brought against insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will * * *.

The policy defines occurrence as "an accident, including exposure to conditions, which results in * * * bodily injury." Since the jury found that the incident was not an accident, the trial court concluded that the Gilmans were not entitled to coverage under the policy.

The Gilmans argue that there is no difference between the questions of whether there was an "accident" and whether the injury was intended, and that if the injury was unintentional, it was accidental. The Gilmans therefore claim that, since the jury found the injury unintentional, they are entitled to judgment as a matter of law. We disagree.

The interrogatories submitted to the jury ask two different questions. The first interrogatory goes to the nature of the *act* itself and the second interrogatory goes to the nature of the *result.* The trial court instructed the jury that "accident" is defined as "an unexpected, unforeseen, or undesigned happening," and that it "includes all negligently caused injury, provided such injury was not intentional."

Accordingly, the jury reasonably could have found that the act of tackling Gilman was not an accident (i.e. was expected, foreseen, and designed, and was not negligent), but that the resulting injury was not intended. Gilman pinned Larson to the ground, Larson told Gilman he was calm, and when Gilman let Larson up, Larson tackled him. Based on these facts, the jury could find that Larson intended to tackle Gilman but that he did not intend to injure him. The jury's findings do not mandate judgment in favor of appellants and are not irreconcilable.

■ 2. The Gilmans alternatively argue that the trial court erred by denying their motion for a new trial. "On appeal from a denial of a motion for a new trial, the verdict must stand unless it is manifestly and palpably contrary to the evidence, viewed in the light most favorable to the verdict." *ZumBerge v. Northern States Power Co.,* 481 N.W.2d 103, 110 (Minn.App.1992), *pet. for rev. denied* (Minn. Apr. 29, 1992). The Gilmans contend that the trial court incorrectly defined "accident" in its instructions and that special interrogatory number 1 was framed incorrectly. Where instructions fairly and correctly state the applicable law, an appellate court will not grant a new trial. *Alevizos v. Metropolitan Airports Comm'n,* 452 N.W.2d 492, 501 (Minn.App.1990), *pet. for rev. denied* (Minn. May 11, 1990). Errors in instructions warrant a new trial only if "they destroy the substantial correctness of the charge, cause a miscarriage of justice, or

result in substantial prejudice." *Kirsebom v. Connelly,* 486 N.W.2d 172, 174 (Minn.App. 1992). The trial court has broad discretion in framing special verdict questions. *Dang v. St. Paul Ramsey Med. Ctr.,* 490 N.W.2d 653, 658 (Minn.App.1992), *pet. for rev. denied* (Minn. Dec. 15, 1992).

The trial court instructed the jury that "accident" is defined as "an unexpected, unforeseen, or undesigned happening," and that it "includes all negligently caused injury, provided such injury was not intentional." Appellant claims that this definition is incorrect, citing *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 358, 65 N.W.2d 122, 126 (1954) and *R.W. v. T.F.,* 510 N.W.2d 231 (Minn.App.1994), *rev. granted* (Mar. 22, 1994).

In *Hauenstein,* the insured distributed a new plaster product used on a construction job. 242 Minn. at 356, 65 N.W.2d at 124. After the plaster was applied, it shrunk and cracked, necessitating removal of the plaster and replastering. *Id.* The insured applied for insurance coverage pursuant to an accident policy which provided coverage for injury to property "caused by accident," and the insurer denied coverage. *Id.* at 356, 65 N.W.2d at 125.

Construing the accident policy, the supreme court defined accident as "an unexpected, unforeseen, or undesigned happening *or consequence.*" *Id.* at 358–59, 65 N.W.2d at 126 (emphasis added). Accordingly, the supreme court held that application of the defective plaster was "caused by accident" since the damage was a completely unexpected and unintended result. *Id.* at 358, 65 N.W.2d at 126.

This court has extended the *Hauenstein* definition of accident to herpes transmission cases. *See, e.g., R.W. v. T.F.,* 510 N.W.2d 231; *Milbank Ins. Co. v. B.L.G.,* 484 N.W.2d 52 (Minn.App.1992), *pet. for rev. denied* (July 16, 1992). In *Milbank,* the trial court found that M.M.D., who had contracted herpes from the insured during consensual intercourse, could recover damages under the insured's homeowner's policy. *Milbank,* 484 N.W.2d at 56. The insurer argued that transmission of herpes was not an "occurrence" under the policy because it was not an

accident. *Id.* Although we applied the *Hauenstein* definition of accident, we limited it to "an unexpected, unforeseen, or undesigned happening," but held that, at least in that context, the term "accident" includes all negligently caused injury, provided such injury was not intentional. *Id.* at 58.

In *R.W.,* we again applied the *Milbank* definition of accident where the insured transmitted herpes to R.W. who then sought coverage under the insured's homeowner's policy. 510 N.W.2d at 235. We upheld the jury verdict finding that R.W. contracted the disease as a result of an accident and that the insured did not expect or intend to infect R.W. *Id.* at 236. We found, based on the jury verdict, that the transmission of herpes was negligently caused and therefore came within the *Milbank* definition of "accident." *Id.*

The Gilmans urge that the trial court should have instructed on the *Hauenstein* definition of accident. *Hauenstein* is distinguishable, however, in two important ways. First, *Hauenstein* involved property damage rather than personal injury. Second, there was no wrongful conduct on the part of the insured. It simply sold plaster which unexpectedly caused damage.

■ Here, the trial court properly instructed the jury based on the *Milbank* definition of accident which allows a jury to find an accident where there is an unexpected, unforeseen, or undesigned happening or a negligently caused injury. The jury's finding implies that the happening (tackling) was designed and therefore not accidental. Appellants urge that there should be coverage because, like the *Milbank–R.W.* line of cases, this case involves an intentional act with unintended consequences. They argue that the trial court in those cases asked whether the transmission of herpes was an accident, not whether the act of sexual intercourse was an accident. Correspondingly, they contend that the trial court here should have asked the jury whether the *injury* to Gilman was an accident, not whether the *tackle* was an accident.

*Milbank* and *R.W.* are distinguishable from this case, however. The act of consen-

sual intercourse, although intentional, was not tortious. The tort occurred when herpes was negligently transmitted, causing injury. The wrong here occurred when Larson aggressively tackled Gilman without his consent, causing injury.

This case is more analogous to *Sage Co. v. Insurance Co. of North Am.*, 480 N.W.2d 695 (Minn.App.1992). In *Sage,* an employer terminated a 63–year–old employee for unsatisfactory performance. *Id.* at 697. The employee sued the employer for age discrimination, alleging mental anguish and suffering, and the employer claimed coverage under its liability insurance policy. *Id.* We held that the insurer had no duty to provide coverage—that the termination was not an "accident" because it was expected, intended, and designed. *Id.* at 697–98. The wrongful act occurred when the employer terminated the employee, causing harm. There, the act of terminating the employee, like the tackle here, was intentional and allegedly wrongful, even though the resulting harm may have been unintended.

■ These cases demonstrate that the proper analysis requires the fact-finder to determine whether the *wrongful or tortious event* was an accident. In *Hauenstein,* the wrongful event was the shrinking and cracking of the plaster which was unexpected, unforeseen, and undesigned, and therefore was an accident. In both *Milbank* and *R.W.,* the wrongdoing was the transmission of herpes, which was found to be negligent. In contrast, the wrongdoing in *Sage,* the termination of the employee, was expected, foreseen, and designed, and therefore not an accident. Likewise, in this case, the wrongdoing was the tackle, which the jury found was not "unexpected, unforeseen, or undesigned," and was not negligent.

■ We hold that in cases such as this, where there is an allegedly tortious and nonconsensual act, the jury should properly be instructed that an "accident" is an "unexpected, unforeseen, or undesigned" happening, and that it includes negligently caused injury that was not intentional. The "happening" is

the wrongful or tortious act or event and, accordingly, the interrogatories should be framed to ask whether the wrongdoing was an accident. Special interrogatory number 1 stated:

> Was the incident in which Frank Gilman and Brian Larson were involved an accident?

The trial court properly instructed the jury on the definition of accident, and, although the interrogatory could have been better framed, it properly asked the jury whether the incident (i.e. the tackle) was an accident.[1]

3. State Farm claims that the trial court's judgment should be affirmed because an intent to cause injury should be inferred as a matter of law. Since we affirm the jury's verdict, we need not reach this issue.

## DECISION

The trial court did not err when it denied appellants' motions for a new trial and judgment notwithstanding the verdict. The trial court properly instructed the jury on the *Milbank* definition of accident and adequately framed the special interrogatory to ask the jury whether there was an accident. The jury's findings that there was no accident but that the injury was unintended are reconcilable. The trial court properly interpreted the jury verdict to exclude coverage under respondent's policy.

**Affirmed.**

---

1. This case has public policy overtones. From a public policy perspective, the inquiry is whether nonaccidental violent acts between people should be covered by homeowners insurance when the resulting injury is unintended. This inquiry is for the supreme court or the legislature.